Savoie vs. Scanlan.

## No. 1411.

### FRANCOIS SAVOIE VS. MICHAEL SCANLAN.

| | |
|---|---|
| 43 | 967 |
| 45 | 1012 |
| 43 | 967 |
| 46 | 375 |
| 43 | 967 |
| 47 | 254 |
| 43 | 967 |
| 51 | 968 |
| 43 | 967 |
| 52 | 1374 |
| 43 | 967 |
| 104 | 507 |
| 43 | 967 |
| 109 | 703 |
| 43 | 967 |
| 111 | 337 |

1. A statement, made in a public place, in the presence and hearing of persons there congregated, that a certain individual named, who resides in the vicinity, is *a damned rascal*, or a *rogue*, and that *he had stolen all the property he possessed*, is, if untrue, a slander *per se*.

2. In the absence of proof of malice, the use of such opprobious epithets, implies malice, and it suffices to maintain an action for the recovery of damages without special injury being proved.

3. Both malice and injury may be inferred from the nature and falsity of the words, and from the circumstances under which they were uttered, without the necessity of special proof.

4. Every person has a right to enjoy that degree of respect, good-will, and social or business distinction to which his own acts and his social or business habits entitle him, and any one who unlawfully interferes with this right, by circulating slanderous reports, renders himself liable for the consequent damages.

5. Under the law and jurisprudence of this court appertaining to libel and slander, these are mixed questions of law and fact, of which courts are better judges than jurors are.

APPEAL from the Thirteenth District Court, Parish of Acadia. Lewis, J.

*Kenneth Baillio* and *C. W. DuRoy* for Plaintiff and Appellant:

1. Every act whatever of man, that causes damages to another, obliges him by whose fault it happened to repair it. C. C. 2315.

2. In an action of slander the only possible defenses are: either a denial or a justification, or a confession under mitigating circumstances. R. S. 3640; 14 An. 406; 15 An. 166; 36 An. 469; 38 An. 162.

Savoie vs. Scanlan.

3. There is no such thing in law as a half way justification. Townsend, Libel and Slander, Par. 212, and note.

4. An answer which both denies and justifies, equivocates and is inconsistent. 10 An. 231; 28 An. 288.

5. Charging plaintiff with being "*a rogue*," is slanderous and actionable, as tending to his infamy, discredit and disgrace. Starke on Slander, Vol. 1, Par. 12, 13, 14, 15, 16, 17; C. C. 2315, 2316; 15 L. 389; Miller vs. Holstein, 12 An. 894; 23 An. 280; 36 An. 469; 38 An. 162; 6 An. 779.

6. The use of opprobious epithets implies malice, where they are slanderous *per se*. Starke on Slander, Vol. 1, Preliminary Discourse, Par. 13, 14, 15, 16, 17; 11 An. 206; 33 An. 914; 38 An. 162.

7. Malice implied in the use of opprobrious charges do not mean a spite against the individual, but *malus animus*, a wanton disposition grossly negligent of the rights of others, 11 An. 206; 36 An. 469.

8. Malice is an imputation of the law from the false and slanderous nature of the charge. Legal malice need not be proved. 3 L. 207; 2 R. 365; 5 R. 116; 8 R. 51; 25 An. 170; 36 An. 467.

9. The maliciously calling a man a rogue is actionable. Starke, Vol. 1, Par. 12 to 17; 6 An. 779; 16 L. 389. Where the law implies malice—*i. e.*, where the words are slanderous *per se*, damages are recoverable without proof of special injury. 14 L. 198; 16 L. 389; 12 An. 894; 23 An. 280; 25 An. 175; 27 An. 219; 29 An. 172; 36 An. 469; 38 An. 162; Sedgwick, Measure of Damages, Par. 39; 34 An. 914; C. C. 1934.

10. Malice is implied from the circumstances of the case; from the conduct of defendant; from the nature and falsity of the charges; from the injury necessarily consequent thereon. Both malice and injury may be inferred from the nature and falsity of the words, and from the doing of the wrongful act without lawful justification or excuse, and from want of probable cause. Starke, Par. 212, 213, 214 and cases cited; 40 An. 423; 27 An. 214; 11 An. 206; 16 L. 389; 3 An. 69.

11. Intemperance, or drunkenness, is not a defense to an action of slander. Townsend, Libel and Slander, p. 249; Ogders on Libel and Slander, p. 169; 5 Ill. 30; 25 Iowa, 87; 38 An. 163.

12. In an action for slander, other words than those charged, spoken at other times and places, may be proved to show malice. 6 N. S. 501.

13. Where a party circulates defamatory charges on mere rumor he can not screen himself by proof of such rumors. 15 An. 492.

14. Every person has a right to enjoy that degree of respect, good-will, and social and business distinction to which his own acts and his social and business habits entitle him, and anyone who lawfully interferes with this right by circulating scandalous reports renders himself liable for consequent damage. Starke on Slander, p. 99, No. 2.

15. Injuries to the feelings and to one's social standing are not susceptible of precise adjustment, but such injuries are recognized as a legitimate ground of action for reasonable indemnity. 17 An. 64; 19 An. 322; 23 An. 280; 38 An. 162.

16. This court has granted the following sums, as reasonable compensation, in the following cases of slander or libel, viz.: $450 for a charge of forgery in 14 L. 198; $500 for a charge of being a rascal, and false swearing in 16 L. 198; $400 for a charge of stealing in 6 An. 779; $1000 for malicious words in 19 An. 322; $1000 for slanderous epithets in 17 An. 64; $500 for slanderous words in 38 An. 162

17. *Falsus in uno falsus in omnibus.*

Savoie vs. Scanlan.

*John N. Ogden* and *E. P. Veazie* for Defendant and Appellee:

The use of opprobious epithets in a moment of irritation, no injury resulting from such transient expression of angry feeling made in an unreflecting moment, is not actionable. Louques' Digest, p. 376, No. 10; citing 15 An. p. 48; Artieta vs. Artieta.

In an action for slander, plaintiff must prove malicious intent. Louques' Digest, p. 376, No. 15; citing 21 An. p. 308; Toy vs. McMahon.

Words uttered without malice and under circumstances from which no malice is in law implied, carry with them no pecuniary responsibility. Hennen's Digest, p. 814, No. 24; citing 8 An. p. 130; Gilbert vs. Palmer.

The verdict of a jury will not be disturbed unless manifestly erroneous. 17 An. pp. 30 and 50; 20 An. pp. 455 and 458; 6 L. pp. 31 and 492; 22 An. p. 31; 31 An. p. 430.

Questions involving the credibility of witnesses are peculiarly within the province of the jury. 9 R. 360; 21 An. 182; Brown vs. Saddler.

———

The opinion of the court was delivered by

WATKINS, J.   Plaintiff is appellant from an adverse judgment based on the verdict of a jury, rejecting his demand against the defendant of $5000 damages for slander and defamation of character.

The charge made in the petition is, that at the store of one Mc-Clelland, in the parish of St. Landry, on the 20th of October, 1888, same being a public place, the defendant, Michael Scanlan, in a public manner, and in the presence and hearing of the bystanders who had congregated there, "maliciously, wickedly, slanderously, libelously, and with the malicious and wicked intention to defame and slander, publicly called [him] a scoundrel, or in the vernacular [of the] public said that [he] was 'a rascal,' 'a damned rascal,' and 'that the property he owned he had stolen, and that (Scanlan) could prove these accusations from the public records.'"

Petitioner avers that he is, and has always been, a citizen of the parish of Acadia, where he has always borne a good name for fair dealing and honesty, and is engaged in farming and mercantile pursuits.   He avers that his good reputation is due to his uniform good conduct as an honest man, and that he has thereby attained a position as an honorable citizen and a just man; and that his "good name and fame have acquired [for] him credit in the commercial world, and a position for himself and family in society."

He further avers that the aforesaid "accusations are false, libelous and slanderous, and [that they] involve great moral turpitude, and were wickedly and maliciously uttered by the defendant, with the unlawful and malicious intent to injure and defame him.   That these

defamations seriously damaged [him] in feeling and reputation, and that he has thereby suffered great mental agony and humiliation.''

He further avers that he has never given the defendant any "cause or excuse for the utterance of (said) false, malicious and wicked slanders, and that said Scanlan was prompted to so utter them through sheer malice, and with intent to defame and, injure him.''

He places his damages at $5000, and prays for judgment accordingly.

In his answer, the defendant avers, "that if he used any remarks whatever regarding the plaintiff, of an injurious character, that the words used were (so) used by him in a moment of temporary irritation, caused by remarks made by the plaintiff derogatory to the Farmers' Alliance, of which defendant is a member. That no words used by him on that occasion were premeditated, or intended to injure the plaintiff, or to damage him, even in the remotest degree. That any transient expression of angry feelings on (his) part, without malice, was made at a small store, in which there were but few persons, and that no currency or circulation was given to said statements by (him), either before or after said meeting at the store.

"That if any currency or circulation has been given to said words, it was done by the plaintiff, and by his son-in-law, Joseph McClelland, who was one of the parties present at the store.''

He charges that plaintiff is actuated by avaricious and unworthy motives in bringing this suit, and is also governed by a desire to harrass and annoy him thereby; and he avers that his action is causeless, vexatious and annoying, and has caused him damage in loss of time, vexation, trouble and attorney fees, in the sum of $300, for which he prays judgment in reconvention.

We have reproduced all of the salient points of the petition and answer, as the most appropriate and effective method of stating the case as it was stated to and tried by the jury; and therefrom it will appear, that slander is charged distinctly in the former, and not denied, but on the contrary, tacitly admitted in the latter; and that with a guarded admission is coupled a plea of justification and excuse.

On these pleadings, evidence *pro et con* was introduced, and it may be fairly summarized as follows, viz.:

That on the date, at the place and under the circumstances given.

Savoie vs. Scanlan.

in plaintiff's petition, and in the course of a conversation had and held by and between the defendant and Boone and McClelland, on a business matter, the defendant stated that the plaintiff, " Savoie, was a rogue, and that he had stolen everything that he owned, and that he could prove that he was a rogue by the records at Crowley" —*i. e.*, the site of the court house of the parish of Acadia, where plaintiff lives.

Those two witnesses recite, circumstantially, the origin and history of the conversation in which the foregoing statement was made; and they affirm that nothing was said or done on that day to irritate the defendant, and that the plaintiff was not present at all. They state that, on the contrary, defendant was a little excited, but did not present the appearance of being angry, though he spoke in a loud tone of voice.

Notwithstanding the defendant and his son (who was in company with him on the occasion) were interrogated as witnesses on the former's behalf, neither of them denied the truthfulness of the testimony of the plaintiff's witnesses; but, during the course of the trial, one of the jurors propounded to the defendant this question, viz.:

" Q. Was the rumor current in the neighborhood concerning what Mr. Savoie had said or done to the members, and those that wished to join the order, that aroused your feelings [and caused you] to use the language charged in the pleadings?"

"Ans. Yes."

This is a confession of the defendant on oath, under circumstances of alleged mitigation; but the plaintiff emphatically denies the statement he is alleged to have made concerning the Farmers' Alliance, which are referred to in the above interrogatory; and McClelland affirms the truth of plaintiff's statement to that effect. In addition to this, an intimate friend of the defendant testifies that the defendant made the following statement to him, after the suit had been filed, viz.:

" I do not recollect if I said these remarks about Mr. Savoie, but if I did, be Jesus I will prove them on him by his kinfolks."

Each of the plaintiff's witnesses admits having repeated to others the charges defendant had made against the plaintiff, and, amongst others, one of them repeated them to the plaintiff himself, on the day after they were made.

The proof shows that the plaintiff is a gentleman of good standing

in the community in which he lives; and that he is a planter and merchant, and gins cotton for the farmers of the neighborhood. It also shows that the plaintiff's family consists of a wife and nine children; that he is over fifty years of age, and that he was born in the parish of St. Landry, and always resided therein until the new parish of Acadia was formed and his property was therein incorporated.

It appears, also, that the defendant is a man of family, fifty-four years old, and a farmer by occupation, and that he is respected and well thought of in the neighborhood.

The testimony clearly establishes all of the averments made in the plaintiff's petition, and that the slanderous utterances of the defendant are libelous and untrue; and that he had not the slightest ground or excuse therefor. The statement, publicly and seriously made, that a reputable citizen is "a rogue, and that he had stolen everything he owned," and that these charges could be proven by simple reference to the parochial archives, constitutes a slander *per se*. They are shown to have been made altogether without provocation on the part of the complainant, who was at his home, nine miles away, at the time. They were made with great apparent deliberation, and not, as is stated in the defendant's answer, "in a moment of temporary irritation."

Considering the defendant's station in life, his occupation, age and family, it is easily perceived that he was much grieved and annoyed, and felt injured in reputation and feeling by these ignominious and slanderous epithets and libelous charges.

In the course of the plaintiff's interrogation as a witness, the following occurred, viz.:

"Q. Have you not been damaged by these statements, made by Scanlan, as proved here to-day?"

"A. I have."

"Q. In what manner—please state to the jury?"

"A. In the first place, I feel that I am hurt, to have to carry such a name through the public. In the next place, my feelings have been hurt, as these things have been repeated to my wife and children by the public, and fearing that the public would believe them, I would be ashamed to go out in their company. This thing has caused me a great deal of worry of mind, to try and try and vindi-

cate myself to the public in which I live; and it has caused me some mortification."

" Q. What has been your reputation among your fellow men?"

" A. So far as I know, it has always been good."

" Q. What has been your social position in the parish?"

" A. Always good."

" Q. Have you ever held official position in St. Landry parish, before its division; if so, what?"

" A. Only a member of the police jury, and president of that body."

" Q. Considering the injury to your feelings, mental anxiety, mortification, and injuries which you say these accusations have caused you, [at] what do you estimate your damages, in dollars and cents?"

" A. For what [the] petition calls, as my name is better than money."

We do not cite this testimony as particularly affecting the *quantum* of damages, but merely for the purpose of characterizing the act, and its injurious effects, in respect to the plaintiff. With due deference to, and with proper regard for the verdict of the jury rejecting the plaintiff's demands, we think he is clearly entitled to some compensation for the damage and injury he has sustained through the effect of the slander which the defendant maliciously propagated against him.

It is true that there is no direct proof of malice on the part of the defendant in giving utterance to the slander; but, on the contrary, the defendant states, as a witness, that he entertained neither malice nor ill will against the plaintiff at the time it was uttered; yet, in such case the law *imputes* malice to the act on account of its character.

For, the use of opprobious epithets implies malice, when they are slanderous *per se*. It suffices to maintain an action to recover damages without proving special injury to the party defamed. Williams vs. McManus, 38 An. 161; 14 La. 198; 13 An. 894; 23 An. 280; 38 An. 469; Miller vs. Holstein, 16 La. 389; Ferdy vs. Foote, 12 An. 894.

And it was recently ruled by this court in Sportorno vs. Fourchion, 43 An. 423, that " both the damage or injury, and the malice, may be inferred from the nature and falsity of the words, and from the circumstances under which they were uttered, without the necessity of special proof." Miller vs. Holstien, 16 La. 380; Daly vs. Van Ben-

thuysen, 3 An. 69; Fush vs. Maddox, 11 An. 206; Cass vs. New Orleans *Times*, 27 An. 214.

The case of Weil vs. Israel, 42 An. 955, states a similar doctrine in an analogous case.

With regard to the injurious effects of slanderous utterances, the doctrine of the common law has become a precept of our jurisprudence, viz., "that every person has a right to enjoy that degree of respect, good will, and social or business distinction to which his own acts, and his social or business habits entitle him, and anyone who unlawfully interferes with this right by circulating slanderous reports, renders himself liable for consequent damages." Williams vs. McManus, 38 An. 161; Staub vs. Van Benthuysen, 30 An. 467; Perret vs. New Orleans *Times*, 25 An. 170; Folkard's Stackis on Libel and Slander, p. 99.

It is just this sort of unwarrantable interference with the plaintiff's rights and privileges that defendant has been guilty of, and for the consequences of which he has become responsible thereby.

In this, as in all cases of this character, the proper measure of damages is difficult to determine, and, consequently, reliance must be placed upon precedent, as imputed by the circumstances of the case.

In Green vs. Harvey, 14 La. 202, the compensation allowed plaintiff for the slanderous charge of forgery, was $450; that awarded to the plaintiff in 16 La. 198, for the charge of being a rascal and of false swearing, was $500; that allowed the plaintiff in Cook vs. Tardos, 6 An. 779, for being called a thief, was $400; the amount awarded to the plaintiff in Williams vs. McManus, 38 An. 161, for being called a *damned whore*, was $500; the amount allowed the plaintiff in Sportorno vs. Fourchion, 40 An. 423, for the circulation of the slanderous report that he was a negro, was $500; the amount awarded plaintiff in Morhenan vs. Ohse, 17 An. 64, for having been denounced as a damned thief, was $1000; the amount allowed plaintiff in Bonum vs. Elliott, 19 An. 322, for slanderous and defamatory words, was $1000.

The slanderous epithets of which the plaintiff complains are not less serious and injurious in character than those employed in either case mentioned.

It is the duty of courts of justice, in proper cases, to punish, and thereby repress the use of such slanderous and defamatory epithets,

Succession of Romero.

to the end that the good name and fair fame of the citizen may be properly protected; and taking into consideration the good character, age and circumstances of the plaintiff, as well as of the defendant, we are of opinion that the sum of $300 would be a reasonable and just allowance to plaintiff, and at the same time not too oppressive on the defendant.

. In rejecting the plaintiff's demands, the jury doubtless gave too great credence and effect to the defendant's disavowal of malice, and plaintiff's failure to prove specific damages; but we have the less reluctance in revising the verdict, as under the law and jurisprudence appertaining to slander and libel these are mixed questions of law and fact, of which the courts are more competent to judge than juries are. For the foregoing reasons the judgment appealed from must be reversed.

It is therefore ordered, adjudged and decreed that the verdict of the jury, and the judgment of the court thereon based, be, and the same is, hereby annulled and reversed; and it is now ordered and decreed that there be judgment in plaintiff's favor and against the defendant for the sum of three hundred dollars ($300), with legal interest from judicial demand, and all costs of both courts.