(110 So. 648)

No. 27910.

## OTERO v. EWING et al.

(Nov. 2, 1926. Rehearing Denied Nov. 29, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Appeal and error ⬅870(5)—Appeal from judgment on reargument, sustaining exception to all claims in petition in libel action, brings up ruling as to all claims, notwithstanding previous decision sustaining exception as to one claim only.**

In libel action against newspaper by defeated candidate for nomination for judgeship, who claimed damages for lost salary, injury to name, and humiliation, appeal from judgment on reargument, sustaining exception to all claims, *held* to bring up for review ruling as to all claims, notwithstanding previous decision sustaining exception as to salary claim only.

2. **Libel and slander ⬅118—Defeated candidate for nomination for judgeship cannot recover for lost salary, in libel action.**

Candidate for nomination for judgeship, defeated by 3,000 votes, cannot recover, in libel action against newspaper for loss of salary because of articles published during campaign, since proof that publication caused defeat would be impossible, and plaintiff may have been defeated at general election, if nominated.

3. **Evidence ⬅45—It is common knowledge that results of elections are often surprising.**

It is common knowledge that there are many surprises at result of elections by the people.

4. **Libel and slander ⬅97—On exception of no cause of action, court must assume truth of allegations of petition, in libel action, relative to plaintiff's good reputation and falsity of charges.**

On exception of no cause of action, in libel action, court must assume truth of allegations of petition that plaintiff had good reputation and that charges published against him were false.

5. **Libel and slander ⬅6(1)—In determining whether publications constituted actionable libel, court should give weight to petition, articles published, and occasion on which publications were made.**

In determining whether publications constituted actionable libel, court must give due weight to every portion of articles and to every fact set out in petition, as well as to occasion on which publications were made.

6. **Libel and slander ⬅48(3)—Newspaper articles, charging that candidate for nomination for judgeship was not qualified for such position, held not libelous.**

Newspaper articles, charging that candidate for nomination for judge of criminal district court possessed neither ability nor other qualifications for such position, *held* not libelous.

7. **Libel and slander ⬅48(3)—False statements that candidate for judgeship was partner of notorious criminal, received weekly payments from criminals, and demanded money in name of city official for nonexisting deficit in campaign expenses held libelous.**

Newspaper articles, charging that candidate for nomination for judge of criminal dis-

trict court was partner of notorious criminal, received .weekly payments from gamblers and criminals, and had demanded money in name of high city official to cover deficit in campaign expenses which did not exist, *held* libelous, if untrue.

**8. Libel and slander ⊙⟿101(5)—Newspaper has burden of proving truth of libelous charges against candidate for judgeship.**

Defendant newspaper *held* to have burden of proving truth of libelous charges against candidate for nomination for judge of criminal district court.

**9. Libel and slander ⊙⟿48(3)—Newspaper is not privileged, during election campaign, to publish libelous charges against candidates.**

Newspaper is not privileged, during election campaign, to publish untrue libelous charges against candidates, any more than it could publish similar matters against one not a candidate, though it may, in good faith, discuss his qualifications and fitness for office.

**10. Libel and slander ⊙⟿71—Failure of candidate for judgeship to reply to libelous charges against him, published during election campaign, does not preclude action against newspaper for libel.**

Failure of candidate for nomination for judge of criminal district court to reply to libelous charges, published in newspaper during election campaign, does not preclude his action against publisher for libel.

**11. Libel and slander ⊙⟿48(3)—Candidate for judgeship may sue newspaper for publication of libelous charges against him during campaign.**

Defeated candidate for nomination for judgeship may sue newspaper for publication of libelous charges against him during campaign, since electorate is not quasi judicial tribunal for final determination of truthfulness of such accusations.

Brunot, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Richard B. Otero against Robert Ewing and others. From a judgment sustaining an exception of no cause of action, plaintiff appeals. Affirmed in part, otherwise set aside, and case remanded.

Richard B. Otero and C. S. Hebert, both of New Orleans, for appellant.

Dart & Dart and St. Clair Adams, all of New' Orleans, for appellees.

THOMPSON, J. This case comes here on appeal by the plaintiff from a judgment sustaining an exception that the petition did not disclose a cause of action, or, to state it more correctly, that the allegations of the petition disclosed that the plaintiff had no legal cause of action.

The suit is for damages in the sum of $172,-000, alleged to have been sustained by the plaintiff by reason of the publication of certain matters and things in the Daily States, a newspaper published in this city and having an extensive circulation, both in the city and throughout the state.

The damages claimed are divided into three elements: (1) An actual financial loss of $72,-000, sustained by reason of plaintiff's defeat in his candidacy for the office of judge of section A, criminal district court, in the primary election held September 9, 1924; (2) damage to his good name, fame, reputation, and credit in the sum of $50,000; and (3) for mortification and humiliation to his feelings in the sum of $50,000.

The publication complained of is alleged to have been made in said newspaper September 3d and emphasized and enlarged in the issue of September 8, 1924, and, as set forth in the petition, is as follows:

(1) That petitioner possessed neither the ability, nor the other qualifications, for said judgeship.

(2) That petitioner was first a minor employee, later a full fledged associate, of the late D. C. O'Malley; that for years he was the agent and partner of Dominick O'Malley, notoriously the enemy of law and order.

(3) That petitioner received weekly payments from handbooks and other operators who are, fundamentally, violators of the law; that he was the recipient of weekly largesses from confessed lawbreakers.

(4) That, claiming to represent one of the city's high officials, petitioner had demanded· a considerable sum of money to cover a fictitious deficit in campaign expenses; that this was confirmed to the States verbally and in writing by

one of the operators; that petitioner had sought to hold-up these lawbreakers, in the name of one of our leading politicians; that these charges were reported to Washington to the Woodrow Wilson administration, subsequently when petitioner became a candidate for United States marshal, and that in consequence thereof petitioner was not appointed marshal for the Eastern district of Louisiana, at New Orleans, by the (then) President of the United States.

(5) That every citizen of the underworld was campaigning for your petitioner.

(6) That petitioner was an undesirable.

(7) "Vote and vote right. They will· pay the price, if they vote to put on the bench of the criminal court Mr. Dick Otero, for whom every citizen of the underworld is campaigning."

"We have recited charges of the gravest character against Mr. Otero, that he was the recipient of weekly largesse from confessed lawbreakers in the name of one of our leading politicians, and that, for years, he was the agent and partner of Dominick O'Malley, notoriously the enemy of law and order."

"Mr. Otero has not answered these charges."

"Should a candidate who has let them stand against him be put on the criminal court to deal out justice between the decent element of this community and the grafters, the gamblers and the lawbreakers generally?"

The petition alleges that the publications were infamously false, wicked, scandalous, malicious, defamatory, and libelous.

It is further alleged that the petitioner is 55 years of age, had lived in this city all of his life, is married, and that he has always enjoyed the esteem and confidence of his neighbors and of many good people throughout this city and state.

It is further alleged that the denunciations of petitioner, as detailed in the petition, were intended by the said Ewing, Ross, and the Daily States to deprive petitioner of his good name, fame, reputation, and credit, and to bring him into odium and disrepute among the people of this city and state.

The exception of no cause of action was first tried before Judge Le Blanc of division G of the civil district court, who sustained the same as to the claim for lost salary, but otherwise overruled it.

Later, the case was, in due course, assigned for trial before Judge Skinner. Thereupon the defendants asked to have the exception reopened, reinstated, and reargued, which was done. The exception was then sustained by Judge Skinner, and the suit was dismissed, as already noted.

[1] It is contended on behalf of defendant that the action of Judge Le Blanc, in sustaining that part of the exception which relates to loss of salary, became final and is not now properly before this court.

The contention is not well founded. In the first place, it was correctly suggested, in the motion to reopen the matter and reconsider the exception before Judge Skinner, that rulings upon exceptions are, at all times, within the control of the court and are always subject to reconsideration whenever the court considers it right and proper, and, in the second place, the plaintiff is appellant from a final judgment which put an end to his case in the lower court.

His appeal therefore brought up for review of the ruling on both phases of his demand, which was against him in the lower court.

[2] The ruling in sustaining the exception, in so far as it relates to the claim of loss of salary, is so obviously correct and well founded that we have not felt called upon to devote much time to it.

[3] It is common knowledge that there are many surprises at the result of elections by the people. They do not always go as some people expect them to go and would have them go. It is as impossible to say after an election what matters and considerations influenced the voters as it is to correctly divine beforehand how an election will go.

The court cannot assume as a fact, even if alleged in the petition, that the publications referred to alone caused the plaintiff to be defeated.

The successful candidate led the plaintiff by some 3,000 votes, and, from the very nature of things, it is impossible for the plaintiff to

allege or to prove as a fact that the publications complained of influenced enough votes to bring about that result.

Non constat the plaintiff would have been defeated, if no attack had been made on him by the newspaper in question.

But even more than this, while a democratic nomination in this state is equivalent to an election, still, the rule is not without exception. The law gives to a voter the right and privilege of writing on his ballot the name of and to vote for a person other than the one officially nominated and it sometimes happens, though not often, that the nominee is defeated at the final election. Who can say that, if the plaintiff had been nominated, he would not have been defeated at the general election?

We are of the opinion, therefore, that the exception was rightfully sustained as to the demand for the salary of the office.

The other demand of the plaintiff deserves a more extended consideration, in view of the seriousness with which no cause of action is urged.

[4] It is a well-settled rule of jurisprudence that an exception of no cause of action admits, for the purpose of the trial of the exception, all facts that are pertinent and well pleaded in the petition.

Applying this rule, the court must assume that the plaintiff bore a good reputation as a man and as a lawyer in the community in which he lived and practiced his profession. The court must likewise assume that the charges published against him were false and untrue, and, if defamatory and libelous in their nature and character, the defendants are liable for such damages as may be awarded by the court or a jury.

[5] In determining the question as to whether the publications constituted actionable libel, the court should give due weight to every portion of the articles and to every fact set out in the petition, as well as to the occasion on which the publications were made.

[6-8] Applying this test, we have no hesitancy in saying that the publications, taken as a whole, were exceedingly condemnatory, and were a reflection upon the character and reputation of the plaintiff as a man and as a lawyer, and were well calculated to injure him and to expose him to public hatred, contempt, and ridicule.

Of course, there was no offense in charging that the plaintiff possessed neither the ability, nor the other qualifications for the judgeship, but when the defendants went further and charged that the plaintiff was an agent, a partner, and an associate with a notorious criminal and lawbreaker, and that plaintiff had received weekly payments from gamblers who are fundamentally violators of the law, and that he had received large weekly largesses from confessed criminals, and, further, that the plaintiff had demanded a considerable sum of money in the name of the high city official to cover a deficit in campaign expenses which did not exist, the defendants went outside and beyond the domain of legitimate criticism and committed a very grievous libel on the plaintiff for which they should be held liable, unless, on a final trial, the defendants can establish the truth of the charges, a burden which defendants unquestionably assume.

We do not understand that counsel for the defendants dispute the fact that the publications, on their face, if made under ordinary circumstances and conditions, would present a case of actionable libel.

The contention made and the argument advanced in support of the exception is that, admitting every fact set out in the petition to be true and under ordinary circumstances and conditions the publications would be libelous, yet the plaintiff cannot recover, first, because the occasion justified the publication and the same was therefore privileged, and,

second, because the plaintiff did not reply to said articles and did not deny the truth of the charges made against him during the campaign.

[9] In other words, the position assumed by the defendants is that a newspaper in a campaign for an elective office may publish anything against a candidate, however untrue, false, and libelous such publications may be, with perfect immunity against and exemption from any liability therefor and that the electorate is the proper, final, and only tribunal to determine the matter as to whether such publications were true or false.

We are not prepared to give sanction to such a doctrine, and we do not believe that any well reasoned opinion can be found sustaining such a proposition.

"No man [under any circumstances] may disparage the reputation of another. Every man has a right to have his good name maintained unimpaired. This right is jus in rem; a right that is absolute and good against the world." Harris v. Minvielle, 48 La. Ann. 908, 19 So. 925.

"The law gives no countenance to the proposition that immunity can be claimed by an editor or publisher of a newspaper, if he shall pamper a depraved public appetite by the publication of falsehoods and calumnies upon private character, nor does it give encouragement to the circulation of defamatory publications by protecting the retailers of them. It protects the character of a man as studiously as it protects his property." Bigney v. Benthuysen, 36 La. Ann. 38.

They "are held to the same responsibility with any other person, and malice on their part is conclusively inferred if the publication is false." Fitzpatrick v. Daily States Pub. Co., 48 La. Ann. 1134, 20 So. 173.

"The word 'malice' in this class of cases does not imply, much less mean, ill will or personal malice. Malice is an imputation of the law from the false and slanderous nature of the charge. Legal malice need not be proved.

"Actual malice may be proved to enhance the damages." Williams v. McManus, 38 La. Ann. 163 (58 Am. Rep. 171); Savoie v. Scanlan, 43 La. Ann. 973, 9 So. 916, 26 Am. St. Rep. 200; Mequet v. Silverman, 52 La. Ann. 1374, 27 So. 885.

In support of their first proposition, counsel quote from Pattangall v. Mooers, 113 Me. 412, 416, 94 A. 561, 563, L. R. A. 1918E, p. 17, as follows:

"The law tolerates such comment and criticism of public men and candidates for public office upon the theory that it is for the public good to do so, to the end that the people may learn the truth as to the qualifications and fitness of candidates for office and become informed of the manner those in office are discharging the duties of the office, thereby being better qualified to intelligently exercise the elective franchise.

"One who becomes a candidate for election to an office in the gift of the people thereby puts in issue before them his abilities, qualifications, and fitness for that office. And any voter or other person having an interest in that election may fully and freely comment on and criticize his talents and qualifications, mentally and physically, for the office he seeks. The conduct and actions of such candidate may be canvassed, discussed, and bodily criticized. Even his faults and vices, in so far as they necessarily affect his fitness for the office, may be investigated and commented on."

There is not one word in the foregoing quotations, however, that grants immunity and exemption of a person or a newspaper from liability for a false and unwarranted libel upon a candidate for office, and the case cited is not authority for such a proposition.

We subscribe to the doctrine that, where a person becomes a candidate for public office, he thereby submits to the electorate his qualifications and fitness for the office to which he aspires, and that his private and public life may be freely and fairly inquired into, discussed, and criticized, with the qualification, however, that the inquiry and investigation must be in good faith and the discussion and criticism must be fair, just, and truthful.

A person by becoming a candidate for office does not offer himself, his good name, reputation, and character as a target for any and all malignant, infamous, and slanderous accusations to be hurled at him and pampered to the public.

A newspaper or an individual who engages in the circulation or publication of libelous matter under such circumstances is just as

amenable to the law and to the party aggrieved as such newspaper or person would be in a libel against an individual who was not a candidate.

In the case of Hall v. Ewing et al., 140 La. 907, 74 So. 190, it was held that, while the official acts of a public functionary may be freely criticized and entire freedom of expression used in argument, sarcasm, and ridicule upon the act itself, yet the occasion will not, of itself, excuse an aspersive attack upon the character or motives of an officer, and, to be excused the critic must show the truth of what he had uttered of that kind.

In the Pattangall Case, supra, so confidently relied on by defendants' counsel, the plaintiff was a candidate for Congress, and, during the campaign, the candidate had been charged with having accepted money for his services in securing the passage, through the Legislature, of the Workmen's Compensation Act, and also had accepted a retainer from the opponents of the act. The candidate, alleging that the accusation was false and untrue, sued for damages. He was awarded $279.25.

The court, in the course of its opinion, observed that the authorities were not in accord on the question whether this privilege to make fair comment and criticism of public men and candidates for public office includes the right to make false defamatory statements concerning him.

But the court, after reviewing the authorities on the question, stated that the rule which excludes, from the doctrine of qualified privilege, false defamatory statements concerning candidates for public office was supported by the great weight of authority.

"He does not, by becoming a candidate for office, surrender his private character to false accusation. The public have an interest to know the truth respecting the qualifications and fitness of a candidate for office. But it would not serve the public good to have falsehoods concerning him disseminated among the people.

"And therefore the law does not justify, under the guise of qualified privilege, a false defamatory statement of specific acts of misconduct concerning a candidate for office. While the publication of the truth respecting him may be justified, the publication of defamatory falsehoods will not be."

If the principle contended for by the defendants, that no responsibility can result from a false and libelous publication made against a candidate for office, be recognized as correct, then full and unrestricted license would be accorded to the newspapers and to every one else to blacken the character and destroy the business and reputation of every one who offers himself for office.

No one would be safe in offering himself for office, and decent and self-respecting people would be deterred from becoming candidates, a condition which unhappily and unfortunately exists to a certain degree in this state at the present time.

[10] The second proposition advanced by counsel to the effect that the doors of the courts are closed against the plaintiff, because he failed to reply to or deny the charges made against him by the defendants during the campaign, is a novel one and is supported neither by sound reason nor legal authority.

We know of no law and counsel have cited none which precludes the victim of an unjustified libel from suing for reparation against his revilers because he did not see fit to deny the charges in the campaign at which he was a candidate.

[11] Nor do we know of any authority which constitutes the electorate a quasi judicial tribunal for the final determination of the truthfulness vel non of the accusations made against a candidate for office.

The Constitution declares that all courts shall be open, and every person, for injury done him in his rights, lands, goods, person, or reputation, shall have adequate remedy, by due process of law and justice administered without denial or unreasonable delay.

The Constitution further declares that any person may speak, write, and publish his

sentiments on all subjects, being responsible for the abuse of that liberty.

If the plaintiff had made a published denial of the charges during the campaign and joined issue on the libelous publications, then the defendants could, with equal plausibility, have contended that the matter was res adjudicata and the doors of the court were closed against him, and that he was without redress, a situation unthinkable in a court sitting to administer law and justice.

Our conclusion is that the petition of plaintiff discloses a cause of action on that part of the demand last herein considered.

For the reasons assigned, that part of the judgment which sustained the exception to the demand for loss of salary, is affirmed, otherwise, the judgment is set aside, the exception overruled, and the case is remanded for trial according to law.

The cost of appeal to be paid by the defendants.

BRUNOT, J., dissents.