SAMUEL, Judge.
These two suits, consolidated for trial and to be decided by one judgment in the district court and consolidated for argument here, are for an alleged libel arising out of an advertisement which appeared in The Times-Picayune, a morning newspaper, and the New Orleans States-Item, an afternoon newspaper, on March 2, 1962. With the exception of the fact that one of the suits is based on the advertisement in The Times-Picayune and the other is based on the same advertisement in the New Orleans States-Item, both suits are identical in every respect.
Mr. Matassa, the plaintiff who was a state representative, and Mr. Clyde F. Bel, one of the defendants and the incumbent seeking' re-election, were candidates in a second primary election to be held on March 3, 1962 for the office of Constable of the First City Court of the City of New Orleans and the advertisement was published as a part of the Bel political campaign. In addition to Mr. Bel, the defendants are the chairman of his campaign committee, who with Bel is alleged to have caused the advertisement to be published, and the publisher of both newspapers involved, The Times-Picayune Publishing Company. That company was succeeded by The Times-Picayune Publishing Corporation and the corporation, herein referred to as “publisher”, has been substituted as a party defendant.
The two individual defendants filed exceptions of no cause of action and the publisher filed a motion for a summary judgment. There was judgment in the trial court maintaining the exceptions and dismissing the suits as to the individual defendants. The trial court also granted the *252 motion and rendered a summary judgment in favor of the publisher, dismissing the suits as to it. Plaintiff has appealed.
Tlie original advertisement is annexed to> and made part of the petitions and the following is a photostat thereof:

*253 The petitions allege that the publication was a paid advertisement run as the result of a conspiracy entered into among the defendants to attack plaintiff’s character and reputation, for the purpose of misleading the public and defeating plaintiff in the contest for constable, when the defendants knew that the matters contained therein were false and untrue; that plaintiff had been exonerated by a Grand Jury, which had returned a “No True Bill” as to the charges, and which Grand Jury action was not revealed by the publication; and that the defendants endeavored to mislead the voters and general public in connection with plaintiff’s voting record in regard to an additional sales tax, which they knew was in the form of a constitutional amendment and would have to be approved by the voters prior to becoming law, and in connection with free hot lunches and school books, when in fact defendants knew that the legislative act referred to applied only to two integrated schools.
With its motion for summary judgment the publisher filed a deposition taken from the plaintiff. In that deposition, in response to questions asked by counsel for the publisher, plaintiff admitted that the original article had appeared in the newspaper as stated in the advertisement; that as a result of an official state audit, he had been charged as the advertisement indicated he would be; that he did vote as a legislator in the manner shown in' the advertisement; and that he had no reason to believe that anyone connected with the publisher bore him any ill will or had conspired against him.
In connection with their exceptions the individual defendants sought to introduce into evidence the original newspaper article upon which the advertisement was based, a copy of the indictment showing the return of a no true bill, certified photostatic copies of the legislative bills involved, certified photostatic copies of the pertinent portions of the Official Journal of the House of Representatives showing the roll call of yeas and nays upon said legislative bills, and a letter attacking Bel, which letter was signed by the plaintiff and allegedly mailed to the voters prior to the publication of the advertisement.
In order to introduce the official records exceptors rely on a doctrine they refer to as the Public Records Doctrine. The reliance is not well founded. The provision of law referred to is applicable only to the manner in which certain official records may be evidenced by properly certified copies thereof, when such records are admissible. See LSA-C.C.P. Art. 1394. We cannot consider any of the evidence mentioned in the preceding paragraph in connection with the exceptions of no cause of action. LSA-C.C.P. Art. 931 specifically provides, in part: “No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.”
Exceptors also have called the court’s attention to the fact that the Board of Levee Commissioners of the Orleans Levee District filed a suit against the present plaintiff in the Civil District Court for the Parish of Orleans for restitution of the amounts allegedly due the Board. The cause of action set out in the petition is the same as contained in the first part of the advertisement. The suit was never brought to trial; it was dismissed for nonprosecution upon a plea of prescription filed by the present plaintiff. As the suit by the Levee Commissioners is an official record of the trial court before which the present action was brought, that court could take judicial notice of the same and consider the suit in connection with the exceptions of no cause of action. McDonald v. Union Indemnity Co., La.App., 149 So. 143.
Essentially the same facts are before the court in connection with the motion for summary judgment and with the exceptions of no cause of action. This is true with regard to the exceptions because the petitions allege that the charges were dismissed by a no true bill returned by the Grand *254 Jury, which, of course, effectively admits that charges were brought, and the petitions contain further allegations devoted to explaining the plaintiff’s vote as a legislator on the legislative acts mentioned, or at least on some of them. Plaintiff did not contend in the trial court, nor does he contend here, that the advertisement is false or untrue in what it says about the prior newspaper account or the voting record. His counsel argue that the publication should have included a statement as to the result of the Grand Jury action and a less misleading explanation of the type of legislation involved in the voting referred to. Therefore, in connection with the motion and with the exceptions we accept as facts: (1) The advertisement is true and correct insofar as it refers to what was printed in the previous article, particularly as to what the president of the Levee Board said, what the contents of the state audit revealed, and the fact that charges were made; and (2) Plaintiff did vote as a legislator as indicated in the advertisement. We note that only plaintiff’s actions as a holder of public office are mentioned and that the advertisement contains no comment whatsoever on the matter of the charges; the only comment is an explanation of the type of legislative act upon which plaintiff voted as a legislator.
Generally, when a man becomes a candidate for public office his character for honesty and integrity and his qualifications and fitness for the position are put before the public and are thereby made proper subjects for comment. While his private life and domestic concerns are protected by the law of slander and libel, as a candidate for public office and during the campaign for that office, his official acts as a public officer properly can be the subject of criticism' even though, under other circumstances, such criticism would constitute defamation. In addition, his opponent, and the press, are entitled to a privilege. This is a qualified privilege and subject to reasonable limitations as is the right of fair comment and criticism; the communications or statements must not be motivated by malice. The reason for the existence of the two doctrines is that the public interest, which is directly involved, is of greater importance than any damage that may be suffered by the candidates. See Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222; Madison v. Bolton, 234 La. 997, 102 So.2d 433; Kennedy v. Item Co., 213 La. 347, 34 So.2d 886; Edwards v. Derrick, 193 La. 331, 190 So. 571; Otero v. Ewing, 162 La. 453, 110 So. 648, 56 A.L.R. 249.
In the instant case we see nothing legally improper in that portion of the publication which deals with plaintiff’s voting record as a legislator. And the public interest is sufficiently broad to include information that a candidate for public office has been charged with the commission of criminal acts connected with the holding of public office. We are concerned here with a principle and wish to make it clear we do not say or suggest that the present plaintiff was guilty of the charges. It is quite possible he was entirely innocent of any wrong doing.
In view of the fact that the publication took place during a political campaign and was concerned only with plaintiff’s acts as the manager of an airport and as a member of the state legislature, both public offices, we conclude that the advertisement enjoyed the protection of both the doctrines of fair comment and criticism and of qualified privilege. We also conclude that there was no legal requirement to point out mitigating factors or circumstances in the advertisement as this is the very nature of a political campaign.
The judgments appealed from are affirmed.
Affirmed.