432 So.2d 988 (1983)
Thomas J. WEATHERALL
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, State of Louisiana.
No. 82 CA 0847.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
*990 James E. Stovall, New Orleans, for plaintiff and appellant.
Steven R. Giglio, Baton Rouge, for defendants and appellees.
Jack M. Weiss, New Orleans, for third party defendants and appellees.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is an action for defamation and invasion of privacy. Plaintiff, Dr. Thomas J. Weatherall, appeals the trial court judgment in favor of defendants, the Louisiana Department of Health and Human Resources, and Charles Olivier.
Plaintiff filed suit against the Department of Health and Human Resources, Charles Olivier (Administrator of the South Louisiana Medical Center at Houma, Louisiana), John Gravois (the newspaper reporter for the Houma Daily Courier under whose byline the article containing the alleged defamatory statement was published), Houma Newspaper, Inc., owner of the Houma Daily *991 Courier and Terrebonne Press. John Gravois, Houma Newspaper, Inc., Houma Daily Courier and Terrebonne Press were dismissed from plaintiff's suit. Various third party demands and reconventional demands were filed, all of which were disposed of and are not before this court on appeal. Trial was held as to defendants, Charles Olivier and the Department of Health and Human Resources and judgment was rendered in defendants' favor.
After a thorough review and evaluation of the record, we are convinced that the written reasons of the trial judge correctly dispose of the factual and legal issues presented in this case. Accordingly, we adopt the hereafter quoted findings of fact and conclusions of law of the trial court as our own:
"Considering the law and the evidence, the memoranda and argument of counsel, the court finds the facts of the present cause as follows:
"1) On June 15, 1980, an article under the byline of John Gravois appeared in the Houma Daily Courier, under the headline `SLMC Equipment OK'dChabert Reveals $5.8 Million Package.' See attached Appendix APlaintiff's Exhibit 1.
"2) Said newspaper article included a statement in which Charles Olivier, Administrator of the South Louisiana Medical Center, is quoted, in the context of a proposed expansion of the center and purchase of new equipment, including a linear accelerator which had been recently approved by the legislature as saying:
`The linear accelerator will be the first piece of equipment of its kind in the region, Olivier said. "The closest one is in New Orleans. That means we really need one here badly."
He said the accelerator will allow doctors to treat cancer in ways that they can't now.
"It can treat deep-seeded tumors that we can't get to now," the administrator said. "This area has one of the highest incident rates of cancer in the entire country. If any area needs the equipment to fight cancer, it's our."' (sic)
"3) Another newspaper article under the byline of John Gravois appeared in the Houma Daily Courier, published on June 20, 1980, entitled `Houma Clinic Disputes SLMC's Claim to First Accelerator.' See attached Appendix BPlaintiff's Exhibit 2.
"4) The article of June 20, 1980, which identified Dr. Thomas Weatherall as a spokesman for the Houma Medical and Surgical Clinic, was in response to the June 15, 1980 article.
"5) Dr. Weatherall in the article of June 20, 1980 stated that he had been operating an accelerator at the clinic for six years and:
`"So, naturally, we're a little confused and dismayed about the situation," Weatherall said. "We don't understand how Mr. Olivier's medical center could have had that agreement with us and come back and say that they're getting a totally new piece of equipment for the parish."'
"6) The article of June 20, 1982 (sic) continued:
`At first, when contacted by the Courier, Olivier said he was unaware that the clinic had an accelerator.
An hour after his initial comments, however, Olivier contacted the Courier and said that the accelerator at the clinic "is not the same kind we're getting. What they have is not what we want. We're not fooling around. We're going to get one of the best, up-to-date models we can."
He said he found that the medical center, which treats indigent patients in a five-parish area, did refer some patients to the clinic, "but we've been referring most of them to New Orleans. Like I said, what the clinic has just won't suit our needs. They have an obsolete piece of equipment."'
"7) Dr. Weatherall's comments were further published in the article of June 20, 1982 (sic):
`Weatherall said clinic administrators also question the need of an additional accelerator in the area.

*992 "There's a lot more to radiation treatment that an piece of equipment," he said. "In the six years we've been operating, we've built up a network of specialists. Where is the South Louisiana Medical Center going to get all those specialists? I assure you, they aren't easy to come by."
Weatherall said research has determined that a single accelerator is all that's "needed" in this area.
Up to now, he said, the clinic has treated 1,300 cancer patients. "We can more than double the load," he said.
"We know what population base is needed to support the equipment," Weatherall said. "Frankly, another accelerator is not needed. You need 20 patients a day, not 20 a year, to support a treatment center."'
"8) The June 20, 1982 (sic) article contained Mr. Olivier's response as to the area's need for the accelerator:
`Olivier said his staff has estimated that the medical center would generate about 200 patients a year. That estimate is backed by the American Cancer Society, the LSU Medical Center and other state and federal agencies, he added.
"We think that's enough to justify our request," Olivier said.'
"9) The statements made in both the newspaper article of June 15, 1980 and that of June 20, 1980 were concerning a matter of public interest, that is, medical services to be provided to the general population of an area covering approximately five parishes by a State established public hospital.
"10) The statement by Charles Olivier in the Houma Daily Courier article of June 20, 1980, `They have an obsolete piece of equipment,' is not defamatory.
"11) There is not sufficient connexity between Dr. Thomas J. Weatherall and the statement that `They have an obsolete piece of equipment' for the court to find that the average reader of the publication of normal intelligence would interpret the statement to reflect on Dr. Weatherall's professional competence.
"12) Dr. Thomas J. Weatherall has no proprietary interest in the linear accelerator of the Houma Medical and Surgical Clinic. (Tr. 16)
"13) The linear accelerator at the Houma Medical and Surgical Clinic is owned by Allied Enterprises. (Tr. 16).
"14) Dr. Weatherall is not a partner in the Houma Medical and Surgical Clinic but rather is employed under contract through his professional corporation to render services in the Houma Medical and Surgical Clinic. (Tr. 30).
"15) At the time of the publication of the article, Dr. Hayman was rendering the same services at the Houma Medical and Surgical Clinic as was Dr. Thomas J. Weatherall. (Tr. 30).
"16) There is no direct references to Dr. Weatherall by name in the statements by Charles Olivier in the articles of June 15, 1980 and June 20, 1980, nor is there reference to Dr. Weatherall indirectly or by implication. (Plaintiff's Ex. 1, 2).
"17) Dr. Thomas J. Weatherall failed to prove by a preponderance of the evidence that any patient had ceased using Dr. Weatherall's medical services by reason of the statement by Charles Olivier in the June 20, 1980 Houma Daily Courier article or that any malpractice suits had therefore been filed against him. (Tr. 134, 142).
"18) Although Dr. Thomas J. Weatherall and other witnesses testified that Dr. Weatherall was "upset" by the article of June 20, 1980, no evidence was presented to indicate that Dr. Weatherall visited any physician or psychiatrist due to this and likewise no objective evidence of any physical or mental consequences to Dr. Weatherall resulting from publication of Mr. Olivier's statements in the article was presented.
"19) Dr. Weatherall's practice of medicine in Houma is limited to two days per week. (Tr. 36).
"20) Dr. Weatherall failed to prove actual damages, including injury to his reputation, by a preponderance of the evidence.
"21) The statements of Charles Olivier in the Houma Courier article of June 20, 1980 *993 were made in the context of a public controversy as to the necessity of expansion of the South Louisiana Medical Center and would not have been understood by a reasonable, average person to have been defamatory against Dr. Weatherall.

Words Not Defamatory
"The threshold issue in a defamation action is whether the complained of words are defamatory, that is, capable of a defamatory meaning. Wattigny v. Lambert, 408 So.2d 1126 ([La.App.] 3rd Cir.1981); Carter v. Catfish Cabin, 316 So.2d 517 ([La.App.] 2nd Cir.1975). The courts have defined a defamatory statement as:
`A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate.'
Brown v. News-World Publishing Corp., 245 So.2d 430, 432, (2nd Cir.1971).
"In deciding whether the words are capable of a defamatory meaning the publication must be read as a whole. Kihneman v. Humble Oil & Refining Company, 312 F.Supp. 34 (E.D.La.1970); Otero v. Ewing, 162 La. 453, 110 So. 648 (1926); Tate v. Nicholson Publishing Company, 122 La. 472, 47 So. 774 (1908). The words must be contrued according to the meaning that will be given them by reasonable individuals of ordinary intelligence and sensitivity. Their significance must not be distorted to give an unusual meaning, and they are to be understood only in the context in which they were used and in the manner shown by the circumstances under which they were used. Ortero v. Ewing, 162 La. 453, 110 So. 648 (1926); Sterkx v. Sterkx, 138 La. 440, 70 So. 428 (1915).
"The use of the word `obsolete' as it appears in the June 20, 1980 newspaper article in reference to the linear accelerator in use at the Houma Medical and Surgical Clinic must be construed in its ordinary meaning within the context of the newspaper article in which it was published and also in light of the general situation in which the statement was made. The meaning that the statement is to be given is that which would be given to it by an average member of the community to which it was directed. In the present case, the local newspaper published the article containing Charles Olivier's statement because the subject of the article, that is, the expansion of the only publicly owned charity medical facilities in the area was one of public interest to the general community. In the context of the public debate as to whether such expansion was necessary, Mr. Olivier, in his official capacity as administrator of the South Louisiana Medical Center, issued statements in support of his position that a linear accelerator was needed at the public hospital to treat the indigent populace of a five parish area. In his statements in the June 15, 1982 (sic) and June 20, 1982 (sic) newspaper articles, Mr. Olivier made his remarks in order to build up his position. However, testimony at trial failed to show that Mr. Olivier's use of the word `obsolete' was defamatory as to Dr. Weatherall. The appropriate meaning of the word `obsolete' is its generally accepted usage and understanding rather than a narrow or more limited usage. There was testimony at trial indicating that the word `obsolete' is used in reference to all equipment except that which is the latest expression of the art. A piece of equipment might be appropriate for one doctor or hospital's use while it might be inappropriate or obsolete in another use. The linear *994 accelerator in use at the Houma Medical and Surgical Clinic had been acquired in 1974. (Tr. 17). Dr. Weatherall himself testified at trial to have used terms, such as `white elephant' and `obsolete' in describing a type of `six' linear accelerator machine which was at one time in use at Ochsner Clinic and was later discontinued from use but which type of machine continues to be used at Stanford. (Tr. 62, 63, 64, 65). Thus, plaintiff himself used the term `obsolete' in reference to the usefulness of a piece of machinery to a particular institution or to fulfill particular needs, just as the term was used in context by Charles Olivier.
"In the context in which the statement was issued, Mr. Olivier was pointing out what he felt was appropriate equipment for the South Louisiana Medical Center. Likewise, it was shown by the evidence that Dr. Weatherall responded in terms to support his position that there was no need for an additional competing facility in this general area of the State. There were two diametrically opposed interests here, those who wished to have a linear accelerator in the charity hospital and those opposed to it. Expressions which emphasized their points of view were used. But these expressions were not defamatory. The words are not literally untrue, nor are they, read in context, legally injurious. Mr. Olivier had to surmount the obstacle of opposition in getting equipment for the hospital and had to show the necessity of the expenditures. In making a conscientious effort to obtain the equipment which Mr. Olivier thought was needed, he expressed the need perhaps emphatically.
"The courts of this State have found that, even though remarks which may be inept and display a basic and obvious ignorance with respect to the matters addressed, simple ineptitude and lack of skill do not obviate First Amendment protection as a matter of law. Shylock, Inc. v. Covenant Broadcasting Corp. of La., 352 So.2d 379 ([La.App.] 4th Cir.1977) (Rehearing Denied, 1977; Writ Refused 1978). In the present case, Mr. Olivier's remarks did not constitute defamation of Dr. Weatherall or result in defamation of Dr. Weatherall.

Defendant Charles Olivier's Remarks Were Not Of and Concerning Plaintiff
"Plaintiff has failed to prove by a preponderance of the evidence that readers would understand from the article of June 20, 1980 that Dr. Weatherall's professional competence was being questioned. In fact, Dr. Weatherall placed himself in the controversy by calling the newspaper and requesting an interview as `spokesman for the Houma Medical and Surgical Clinic.' (Tr. 38; Plaintiff's Exhibit Number 2). Mr. Olivier never referred to Dr. Weatherall by name, and certainly, there are numerous physicians practicing at the Houma Medical and Surgical Clinic. There was no identification of Dr. Weatherall personally, and Dr. Weatherall failed to prove by a preponderance of the evidence that he was injured personally or in his professional reputation.
"Louisiana courts recognize the principle that `the defamatory words must refer to some ascertainable person, and that person must be the plaintiff. If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain which was uncertain before.' Hyatt v. Lindner, 133 La. 614, 63 So. 241 (1913); Lewis v. Baton Rouge Oil & Chemical Workers Union, 387 So.2d 1311 ([La.App.] 1st Cir.1980). The cases cited by plaintiff in his rebuttal memorandum are clearly distinguishable from the present case. Perrilloux v. Batiste, 357 So.2d 841 ([La.App.] 4th Cir.1978), concerned an appeal based upon the trial court's maintenance of an exception of no cause of action. In that case, the defendant while testifying in a criminal case allegedly looked at plaintiff as one of a small group of women and uttered the defamatory statement; the appellate court overruled the trial court's decision in order that, at trial on the merits, the trial court might determine whether some or all of the other persons in the courtroom understood that the remarks were being directed to the plaintiff and to establish that the remarks *995 were specifically made about the plaintiff. In the present case, defendant Olivier's remarks were made about a piece of equipment. This court has found that in the context in which they were made Olivier's words were not defamatory, but even if the words were defamatory, they were not made specifically about Dr. Weatherall who also suffered no injury therefrom.
"Plaintiff also relies on Buratt v. Capital City Press, Inc., 399 So.2d 687 (1st Cir.1981). This case also involved the maintenance in the trial court of an exception of no cause of action. In that case, however, the plaintiff was specifically mentioned by name in the news article alleged to be defamatory. The appellate court properly considered the article taken in its entirety, together with reasonable inferences to be drawn from the words themselves in order to determine whether the plaintiff could have been injured by the alleged defamation. In the case at bar, Mr. Olivier never mentioned Dr. Weatherall by name or by implication and the two articles taken in their entirety in the context of the circumstances surrounding their publication are not found to be defamatory against Dr. Weatherall.
"The other case relied upon by plaintiff, Naihaus v. Louisiana Weekly Publishing Company, Inc., 176 La. 139 145 So. 527 (1932), is also distinguishable from the case at bar. In that case, the name of the plaintiff was not mentioned in the defamatory publication, however, it was well known that plaintiff was the proprietor of the business mentioned in the publication and the court found that the principal injury done by the publications complained of was done to the business, of which the plaintiff was the proprietor. Here, no patients refused treatment by Dr. Weatherall after publication of the June 20, 1980 article. (Tr. 134). Dr. Weatherall had no loss of income as a result of the article. (Tr. 142). No malpractice suits have been filed against Dr. Weatherall since publication of the article. (Tr. 142). Dr. Weatherall testified that he suffered no economic loss. (Tr. 142). Although Dr. Weatherall stated that he felt his reputation in the community had been damaged, he could offer no evidence to that effect. Thus, as distinguished from the aforementioned case, Dr. Weatherall did not prove by a preponderance of the evidence that he was injured in his business.

Dr. Weatherall's Privacy Was Not Invaded By Reason of Being Placed in a False Light Before The Public
"Plaintiff, Dr. Thomas J. Weatherall further alleges in his petition for damages invasion of privacy by reason of his having been placed in a false light before the public by defendant's statements. The right of privacy has been defined in Louisiana jurisprudence as `the right to be left alone' and `the right to an inviolate personality.' Pack v. Wise, 155 So.2d 909 ([La.App.] 3rd Cir. 1963). Other members of society have a duty not to violate this right. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386 ([La.] 1979). Recovery for invasion of a right of privacy is only available when the plaintiff's private affairs have been given unauthorized exposure. Mahaffey v. Official Detective Stories, Inc. [210 F.Supp. 251] (W.D.La.1962). In the present case, no duty of defendant to plaintiff was violated since no privacy right was involved. Dr. Weatherall voluntarily made statements to the newspaper and invited publicity. He also visited the Governor in an effort to influence the outcome of legislation because of his opposition to expansion of the South Louisiana Medical Center. There was no sphere of Dr. Weatherall's right of privacy which was unreasonably invaded by defendant, Charles Olivier.

Damages
"Plaintiff, Dr. Thomas J. Weatherall seeks both compensatory and punitive damages. In Kennedy v. Item Company, 213 La. 347, 34 So.2d 886 (1948), the Louisiana Supreme Court recognized that, due to the difficulty of proving pecuniary damages in a defamation action, the amount of damages *996 is left largely to the discretion of the trier of fact. The United States Supreme Court in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), stated:
`(A)ctual injury is not limited to out of pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, ... all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.' 94 S.Ct., at 3012.
"Dr. Weatherall failed to produce competent evidence of injury to his reputation or to his medical practice. Dr. Russell Henry testified that he had had a conversation with Dr. Weatherall subsequent to the publication of the newspaper article of June 20, 1980, but did not testify that Dr. Weatherall's reputation in the medical community or in the general population had suffered as a result of the article. (Tr. 98) Dr. Frank J. Graffagnino also testified to having discussed the news article with Dr. Weatherall but there was no testimony as to injury to Dr. Weatherall's reputation in the community. (Tr. 112-113).
"Dr. Weatherall testified to having suffered no economic damages as a result of the article. (Tr. 142). He had no patients who thereafter refused treatment, lost no referrals from other doctors and his patient load remained constant. (Tr. 134, 142). He could state no other instances of injury. (Tr. 143). No witness testified to any disparagement of Dr. Weatherall's professional reputation. No person who was not professionally associated with Dr. Weatherall, as with Drs. Henry and Graffagnino testified that they associated the use of the linear accelerator at the Houma Medical and Surgical Clinic with Dr. Weatherall. Even Drs. Henry and Graffagnino did not state that their opinion of Dr. Weatherall's professional competency changed after the article appeared.
"Likewise, plaintiff failed to prove by a preponderance of the evidence mental anguish caused by the article such as to justify an award of damages. Damages for humiliation, embarrassment and mental anguish and suffering, although they need not be established in terms of pecuniary value, are required to be shown by competent evidence. The extent of such evidence in the present case, other than Dr. Weatherall's own testimony, was that of Robbie Smith, who when asked the effect of the publication upon Dr. Weatherall simply stated, `It upset him.' (Tr. 109). No other witnesses testified in this regard and no medical doctors or psychiatrists were called to testify as to any physical or psychological injuries which Dr. Weatherall suffered as a result of the June 15, 1980 and June 20, 1980 newspaper article. Thus, absent evidence to the contrary, the court concludes that plaintiff failed to prove damages by a preponderance of the evidence. Absent competent evidence concerning injury, there is no support for an award. Bosley v. Hebert, 385 So.2d 430 ([La.App.] 1st Cir. 1980).

Punitive Damages Under Article 2315.1
"Plaintiff has also requested punitive damages based upon Article 2315.1 of the Civil Code of Louisiana which was in effect at the date of the proceedings and which provides in pertinent part:
A. In addition to general and special damages, the plaintiff who obtains a judgment because of having been defamed, libeled, or slandered may be awarded punitive damages and reasonable attorneys fees, if it is proved that the defamatory, libelous, or slanderous statement on which the action is based was made with knowledge of its falsity or with reckless disregard of whether it was false or not.
"Punitive damages are permissible under this section and are discretionary with the trial court. Since the court has found the words of Charles Olivier were not defamatory against plaintiff, Dr. Weatherall, there can be neither compensatory nor punitive *997 damages awarded. The court, however, also notes in this regard that no reported Louisiana case has awarded punitive damages in a defamation case. McHale v. Lake Charles American Press, 390 So.2d 556 (3rd Cir.1980). The statute also incorporates the test of Gertz v. Welch, 418 U.S. 323 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), wherein the United States Supreme Court held that states may permit a recovery of punitive damages in defamation cases when liability is based on a showing of knowledge of falsity or reckless disregard of the truth or falsity of the statement; that is, punitive damages are allowed where actual malice is shown. Since the statement in the present case was not proved to be defamatory nor was injury to Dr. Weatherall proved by a preponderance of the evidence, Dr. Weatherall is entitled to neither compensatory nor punitive damages."
The Department of Health and Human Resources, by way of answer, seeks damages for frivolous appeal, arguing that plaintiff was motivated by selfish desires to thwart the expansion of the South Louisiana Medical Center. Damages for frivolous appeal are authorized in LSA-C.C.P. art. 2164. However, the provision in this article authorizing damages is penal in nature and must be strictly construed. Appeals are favored and damages for frivolous appeal will not be awarded unless it manifestly appears that appeal was taken solely for delay or that appealing counsel does not seriously believe in the position he advocates, even though the appeal lacks serious merit. Jackson v. East Baton Rouge Par. Sch. Bd., 348 So.2d 739 (La.App. 1st Cir. 1977). Even though, in our opinion, the instant appeal lacks serious merit, we cannot say that the appeal was taken solely for delay or that plaintiff's counsel did not seriously and earnestly believe in and advocate plaintiff's position. Damages for frivolous appeal are not appropriate.
For the above reasons, the judgment appealed from its affirmed at appellant's costs.
AFFIRMED.