O’NIELL, C. J.
 

 This is ■ an action for damages for libel. The plaintiff sued for $25,000, and got a verdict and judgment for $350. The defendant has appealed, and the plaintiff, answering the appeal, prays for the whole $25,000.
 

 He is a retail clothing merchant, whose establishment is called the New Orleans Clothing Store, and is located at 528 South Barn-part street, in New Orleans. Nearly all of the retail business done in that part of the city is with colored patrons. The plaintiff’s customers are nearly all colored men, to whom he sells cheap clothing, mostly on the installment plan.
 

 The defendant is a corporation, composed of colored people, owning and publishing in New Orleans a weekly newspaper called the Louisiana Weekly, published for the benefit and advancement of the peopde of their race. The paper has a circulation of about 10,000 copies per week, about 6,000 copies per week being distributed in New Orleans.
 

 The plaintiff’s complaint has reference to an article published in the Louisiana Weekly on the 1st of August, 1931, and another article published a week later. The publications had reference to a quarrel which had occurred between the plaintiff and a colored customer, named Paul Gilbert, in the New Orleans Clothing Store. It appears that Gilbert bought a suit of clothes of the plaintiff, for $18.95, in June, 1931, paying $9 on account, and agreeing that the plaintiff should put aside the suit and hold it until Gilbert would call and pay the balance due, $9.95, and receive the suit. The transaction was evidenced by a card given to Gilbert, signed by plaintiff’s salesman, stating the amount received and the balance due, and the number identifying the suit of clothes, which was put aside for Gilbert, after certain need
 
 *243
 
 ed alterations were made. Near the end of July, 1031, Gilbert called at the New Orleans Clothing Store and demanded a return of the $9 which he had paid on the price of the suit of clothes, contending that the plaintiff and his salesman had agreed verbally, at the time of the transaction, that the $9 would be returned to Gilbert if he should get out of employment at any time before paying the balance due on the suit of clothes. The plaintiff and his salesman denied having made any such agreement. Gilbert then asked to be allowed to.take two pairs of trousers, at $4.50 per pair, for the $9 which he had paid on the price of the suit of clothes. But the plaintiff refused to make the concession, and insisted upon Gilbert’s carrying out his bargain by paying the $9.95 balance and taking the suit of clothes, which the plaintiff had been deprived of the right to sell to any one ■else. That is, substantially, Gilbert’s own version of the argument, the culmination of which he describes thus, as a witness for the defendant in this suit: “And we began to talk, and the argument became more heated, ■and then it became over-heated, and I left the store and met an officer, and I stated to him how it 'was, and asked what I could do about it, and he said the only thing he could tell me to do was to see the district attorney, and I went to the court house and saw the •district attorney.”
 

 On the front page of the next issue of the Louisiana Weekly appeared big headlines reading: “Purchaser to go to Court for his ’Cash.- — Officer called in to settle Dispute.— District Attorney’s Office consulted.” And under these headlines the story was told, thus: “The 500 block in South Rampart street was the scene of din and confusion Wednesday morning when Paul Gilbert, 1513 Terpsichore Street, and the manager of the New Orleans Clothing Store participated in a verbal battle over $9.95 balance due on a suit of clothes. Mr. Gilbert stated to a Weekly reporter that the manager of the store refused to give him any consideration when he reguested credit on $9.-00 already paid on a suit of clothes. An officer was called in to iron out the trouble, but to no avail. Gilbert was advised to consult the district attorney, which he did, and was informed by the latter that the only thing for him to do was to take the case to the courts. According to the police officer, hardly a week goes by but the New Orleans Clothing Store is in a broil with a colored customer. Recently the manager of the place was arrested following a disturbance of a similar nature. The officer, when interviewed by a Weekly representative, expressed the desire that the Louisiana Weekly play up this particular incident, and warn unsuspecting negroes to beware of such sharp-dealing Rampart Street shopkeepers.”
 

 The plaintiff immediately served notice upon the managing editor of the Louisiana Weekly that he would seek redress in the courts; and many other retail merchants in the 500 block on South Rampart street sent letters of protest to the Louisiana Weekly, against being characterized as “such sharp-dealing Rampart Street shopkeepers.” In response, the Louisiana Weekly published on its front page, in its next issue, under the headlines “Rampart Merchants Protest News Article,” the following article: “In protest to the article in The Louisiana Weekly last week, relative to the disturbance which occurred in the New Orleans Clothing Store, many Rampart Street merchants have forwarded letters
 
 *245
 
 to this office, asking- that their stores be not included among those stores which are continually fleecing our people of their money. The article, though mentioning the 500 block, specially mentioned the New Orleans Clothing Store. The said store has served notice that they intend to go to court for the injury sustained by the article. In the meantime several witnesses have been secured by this publication to vindicate its statement. The management of this publication is desirous of having as many names as are to be had of colored people who have been mistreated by purchasing at the New Orleans Clothing Store.”
 

 The defendant, answering the suit, pleaded that the facts stated in the publications complained of were true, and were published in the interest of the other merchants in the 500 block on South Rampart street and in that neighborhood, as well as in the interest of the colored patrons of those stores. The defendant pleaded also that the plaintiff was forbidden to recover damages for an alleged injury to his name or business, because he had failed to comply with the provisions of Act No. 64 of 1918, p. 97, requiring a person doing business under an assumed name, or under any name or style other than his own name, to record with the register of conveyances a certificate of the true name of the person or names of the persons conducting the business, etc.
 

 By pleading that the publications complained of were true, the defendant, of course, assumed the burden of proving that they were true.
 

 The published request, in the concluding lines of the last publication complained of, for the names of colored people who had been mistreated by purchasing at the New Orleans Clothing Store, seems to have brought forth only one witness, in addition to Paul Gilbert, and that one witness undertook to testify only about a $4 transaction which took place after this suit was filed. The only other witnesses whom the defendant produced to prove the truth of the charges made against the plaintiff were three police officers and four of the plaintiff’s competitors in business, in the 500 block on South Rampart street. All that these witnesses testified to was that a number of quarrels had occurred in the New Orleans Clothing Store, between the proprietor and dissatisfied colored customers, similar to the quarrel with Paul Gilbert. But the evidence did not, in the estimation of the jury, and it does not in our estimation, warrant the characterizing of the plaintiff as a sharp dealing Rampart street shopkeeper,’ or justify the characterizing of his store as being among those stores which are continually fleecing the colored people of their money. In other words, the record does not disclose any reason why we should take issue with the jury and the trial judge on the finding that the defendant failed to prove the serious charges which the plaintiff complains of.
 

 There is no doubt about the right or the duty of the defendant to make a full disclosure in its publication of the facts in .any case where it is deemed necessary or proper to protect the colored people (particularly those who for lack of education or intelligence need protection), against imposition. Por that purpose, the defendant may, as may any publisher of a newspaper, indulge in fair comment and criticism, but always under the responsibility of having to prove the truth
 
 *247
 
 of such comment or criticism when called upon so to do by a party injured thereby. If it were not so, every shopkeeper in the 500 blctak and in that neighborhood on South Rampart street would be at the mercy of the appellant.
 

 We do not find it necessary to say whether the plaintiff's calling his establishment the New Orleans Clothing Store, without having recorded a certificate such as is provided for by Act No. 64 of 1918, p. 97, was a violation of the statute. It is sufficient to say that, even if the plaintiff’s business was conducted in violation of the statute, that would not relieve any one of a financial obligation towards the plaintiff, or justify any one’s-injuring the plaintiff in his business. Wolfe v. Joubert, 45 La. Ann. 1100, 13 So. 806, 21 L. R. A. 772; In re Pelican Insurance Co., 47 La. Ann. 935, 17 So. 427; Smith v. Williams, 152 La. 949, 94 So. 859; Toelke v. Toelke, 153 La. 697, 96 So. 536. It was said in Smith v. Williams, and repeated in Toelke v. Toelke: “Where a statute forbids the doing of business under an assumed name except in certain cases, a debtor of such person cannot claim the nullity of his engagement on account of the creditor’s violation of the statute, where the only penalty affixed by the statute is making it a misdemeanor and subjecting the offender to a fine, etc.”
 

 The decisions which we have cited have reference to section 2668 of tfie Revised Statutes, forbidding the use of the name of a partner' not interested in the firm, and the decision in Smith v. Williams and in Toelke v. Toelke, have reference also to Act No. 64 of 1918. Smith v. Williams was a suit for damages for breach of contract; but the principle which was'applied to the case is just as applicable to a suit for damages arising ex delicto.
 

 It is argued for the appellant that the plaintiff could not have suffered any injury to his name or reputation, because his name was not mentioned in either of the publications. It was well known in the neighborhood, however, that the plaintiff, Carl Naihaus, was the proprietor of the New Orleans Clothing Store, the advertising matter or business cards of which establishment bore’ his name as proprietor. That is a matter of little or no importance, because the principal injury done by'the publications complained of was done to the business, of which the plaintiff was the proprietor.
 

 The amount of damages to be allowed in a case of this kind is a matter so largely within the discretion of the jury that the appellate courts always defer to the judgment of the jury in that respect, unless it is manifestly wrong. In this case we do not see any reason for either increasing or reducing the amount of the damages allowed.
 

 The judgment is affirmed.