PER CURIAM.
This is a suit by five persons who allege a publication issued by the Baton Rouge Oil and Chemical Worker’s Union defamed them. We have carefully read the record, and find the written reasons of the trial judge, a copy of which is attached, correctly dispose of the factual and legal issues presented by this case.
For the reasons expressed by the trial judge, which we adopt as our own, the judgment appealed is affirmed, at the cost of appellants.
AFFIRMED.
WRITTEN REASONS FOR JUDGMENT
On January 13, 1978, the news publication of the Baton Rouge Oil and Chemical Workers Union (Union) carried two stories concerning the progress of litigation filed by certain persons against the Union. The first article was entitled “Federal Suit Against Union and Company Dismissed” and read as follows:
“Many of the fellows who get fired by the companies run to some shyster lawyer who files a law suit against the Union and Exxon. From the lawyer’s office, they rush to E.E.O.C. and file charges of some type of descrimination [sic] and ask for huge sums of money.
“To salve their conscience or line their pockets.
“We take great pride in our accomplishments over the years for all our members. We work hard to make sure we treat every member the same. This position has paid off for the Union. Every law suit tried so far has been decided in our favor.
“In the latest court action, Ronald Matthews, fired by the Company, filed suit against the Union and. the Company. The case was dismissed by the Court.”
The second article bore the caption “A Big Case on the Stove ” and it read:
“We are charged by former Union member Harold Lewis, who was fired, and two *1313 others still working of discriminating in the matter of jobs. The case was supposed to be heard Jan. 13, 1978, but action was postponed until Jan. 14, 1978.
“We feel the Union should not have been included in the suit, but then Harold and his lawyer will take money from any source if they can get it, and the Union’s money spends as well as the Company’s.
“However, we know we are not guilty, and Harold and his lawyer are going to be in for a tussle before they get our money.
“Harold and his friends get a free lawyer. We have to pay ours. Sorta hard to take, but we have no choice.”
In due course, suit was filed by the plaintiffs in this action alleging that the articles had libeled them and seeking $8V2 million dollars as damages. Defendants McLaughlin, Cannon, Barras, and Polito were dismissed from the lawsuit by stipulation, leaving as defendants the Union and James R. McDowell.
The basic facts are not seriously in dispute. The articles in question were contained in the defendant Union’s “Newsletter” of January 13,1978. Defendant McDowell is the president of the Union and editor of the “Newsletter.” The publication is available to Exxon’s some 2,600 Union employees at the Baton Rouge refinery. It is also mailed to the Company’s annuitants and is available on a fairly limited basis to others such as selected public officials. It is possible and the Court finds that some of the copies undoubtedly fell into the hands of members of the general public.
Ronald Matthews was the only person referred to by name in the first article. He had in fact been dismissed by the Union, he had filed a suit, and the suit had been dismissed. Plaintiff Johnnie A. Jones had been his lawyer in the proceedings. He had not in fact gone to the E.E.O.C. Matthews offered no evidence whatsoever as to the effects of the article on him other than to say that he observed a standoffish attitude on the part of some people with whom he had had contact.
Harold Lewis, who was mentioned by name in the second article, testified, as did the two others involved in the suit which was the subject of the second article but who had not been mentioned by name— James C. Mathews and Elmo W. Morgan. The latter two are also plaintiffs in this action. They are still working and in fact have been promoted. Several other parties testified on behalf of plaintiffs, mostly persons who had also appeared as witnesses in the federal proceeding, and their testimony was basically that they felt the articles were libelous.
The evidence also showed that Johnnie A. Jones had since July 29, 1974, been counsel of record for the plaintiffs, Harold L. Lewis, James C. Mathews and Elmo W. Morgan, in Civil Action No. 74,212, entitled “Harold L. Lewis, et al. v. Exxon Corporation, et al.” and since May 27, 1977, had been counsel of record for the plaintiff Ronald J. Matthews, in Civil Action No. 77,184, entitled “Ronald J. Matthews v. Exxon Corporation, et al.” both on the docket of the United States District Court for the Middle District of Louisiana.
None of the evidence or testimony directed itself to any specific damages suffered by any of the plaintiffs, and only the very slightest of testimony related to the effect of the article upon their standing with their fellow employees. In fact, it is not clear whether the possibly adverse attitude of their fellow employees was the result of their filing of the suits involved or was in anywise attributable to the two articles. There is no evidence that Messrs. Jones, Morgan, Lewis, Mathews, or Ronald Matthews were well known in the group to which the publication was directed and there was no testimony by any of the plaintiffs that they had any general reputation in the group to which the communication was addressed. Similarly, there was no proof offered at the trial of any reputation or professional competency enjoyed by Mr. *1314 Jones. He personally testified that he had been suspended from the practice of law by the Louisiana Supreme Court for unprofessional conduct in mishandling moneys belonging to his clients, but testified that he either had applied or would apply for a writ to the United States Supreme Court and that the Louisiana Supreme Court had stayed his suspension pending that application.
Mr. McDowell testified that he had no particular lawyer in mind when he wrote the first article and although he had been a fairly active participant in the litigation involved, that he did not know at the time of the article that Mr. Jones was the attorney for Ronald Matthews. Although the Court was impressed by the candor and forthrightness of Mr. McDowell in his testimony as a whole, it finds that Mr. McDowell knew or should have known that Mr. Matthews was represented by Mr. Jones.
The law of libel in Louisiana is fairly well settled. “Defamation is a statement which exposes a person to contempt, hatred, ridicule or obloquy.” McGowen v. Prentice, (La.App. 3rd Cir., 1977) 341 So.2d 55. The elements of defamation are: (1) Defamatory words; (2) Communication to a person other than the person claiming the defamation; (3) Falsity; (4) Malice, actual or implied; and (5) Resulting injury. Lees v. Smith, (La.App. 3rd Cir., 1978) 363 So.2d 974. A qualified privilege is granted for a publication made in good faith, on a subject matter in which the communicator has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty. Toomer v. Breaux, (La.App. 3rd Cir., 1962) 146 So.2d 723. All of this is in addition to the law established by the landmark case of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, relative to the first amendment guaranteeing freedom of speech and its application to false statements about public officials.
The principal questions in this lawsuit are: (1) Was the publication defamatory?; (2)Was the publication privileged?; (3) Was the publication directed with sufficient certainty to all or any of the plaintiffs?; (4) What injury was suffered by the plaintiffs?
Without going into the details of the testimony adduced at the trial, the Court finds that a fair reading of the second article does not show it to be defamatory. Although fairly rough, it is not libelous per se and would appear to fall within the realm of fair comment. Certainly, there is no significant misstatement of fact contained in it and although the plaintiffs in the action who were involved in the “Big Case on the Stove” contended that the fair implication of the phrase “will take money from any source” was that they would rob, cheat or steal, the Court finds that read in the context of the entire article the phrase obviously referred to anyone from whom they might recover in a lawsuit — in this instance the Company or the Union. The Court therefore finds that no one was libeled by the article entitled “A Big Case on the Stove.” For that reason it does not have to direct its attention to the question of privilege, publication, identification or injury.
With regard to the first article, the two parties who could have been libeled if the article were indeed libelous would have been Mr. Matthews and Mr. Jones. As counsel for defendants points out, the first three paragraphs (the second of which is actually an elliptical sentence) are comments by the editor of a general nature. The last paragraph is factual. Even if the article be taken as a whole and the worst implications read into it, the Court finds nothing which would tend to expose Mr. Matthews to contempt, hatred, ridicule or obloquy, or which would tend to cause him to be avoided or deprived of public confidence, or to cause him injury in his occupation or to otherwise injure his reputation. Madison v. Bolton, (La.1958) 234 La. 997, 102 So.2d 433. Certainly, plaintiff Ronald Matthews failed to prove by a preponder- *1315 anee of the evidence that any of these things resulted from the article.
With reference to plaintiff Mr. Johnnie Jones, had there been an identification of him as a shyster lawyer in the article as there had been an identification of the specific lawyer involved in Madison, supra, or Kennedy v. Item Co., Inc., (La.1948) 213 La. 347, 34 So.2d 886, or Greenberg v. DeSalvo, (La.App. 4th Cir., 1968), 216 So.2d 638, the article would have been libelous per se under the doctrine enunciated by these three cases. However, he was not so mentioned by name in the article. Our courts have early recognized the principle that “the defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff.” Hyatt v. Lindner, (1913) 63 So. 241. It is true that in the case of Nailhaus v. Louisiana Weekly Publishing Co., Inc., (La.1932) 176 La. 240, 145 So. 527, cited by the plaintiff, the Court allowed recovery even though the plaintiff was not mentioned by name. However, that case is clearly distinguishable from the case at bar since the Court found the principal injury to have been done to the business and that the name of the owner thereof was well known, saying:
“It is argued for the appellant that the plaintiff could not have suffered any injury to his name or reputation, because his name was not mentioned in either of the publications. It is well known in the neighborhood, however, that the plaintiff, Carl Naihaus, was the proprietor of the New Orleans Clothing Store, the advertising matter or business cards of which establishment bore his name as proprietor. That is a matter of little or no importance, because the principal injury done by the publications complained of was done to the business, of which the plaintiff was the proprietor.”
In any event, there was no credible testimony at the trial establishing that it was well known that Mr. Jones was the lawyer for Ronald Matthews. Considering the fact that Mr. Jones was not named as the attorney for Mr. Matthews, was not referred to in the paragraph containing the references to “shyster lawyer,” the general nature of the comments contained in that paragraph, and the lack of evidence concerning either general or special damages suffered by Mr. Jones, it is the conclusion of the Court that Mr. Jones was not libeled by the article.
In summary, the Court finds that the second article in question was not defamatory. With reference to the first article, it concludes that it was not defamatory with reference to Mr. Jones or Mr. Matthews, and that if it were, although published (as well as the second article), there was no significant falsity, no malice, actual or implied (other than as is implicit in the use of the word “shyster”), no identification of an ascertained or ascertainable person insofar as Mr. Jones is concerned, and last, but not least, no proven injuries to either Mr. Matthews or Mr. Jones.
For these reasons, plaintiffs’ suit will be dismissed at their cost.