425 So.2d 820 (1982)
Joseph CASHIO, Jr.
v.
J.M. HOLT, et al.
No. 5-198.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1982.
Rehearing Denied February 17, 1983.
*821 Law Offices of Daniel E. Becnel, Jr., Daniel E. Becnel, Jr., Reverve, for plaintiff-appellee.
A. Justin Ourso III, New Orleans, for defendants-appellants.
Before SAMUEL, KLIEBERT and GRISBAUM, JJ.
GRISBAUM, Judge.
In this defamation suit, appellee, Joseph Cashio, Jr., filed suit against his employer, Godchaux-Henderson Sugar Company, Inc., a subsidiary of The Great Western Sugar Company and two of its employees for damages resulting from alleged publication of his termination letter. The trial judge awarded Mr. Cashio $200,000.00. The issues on appeal are whether appellee proved the essential elements in a defamation action. We reverse.
Joseph Cashio, Jr. started work with Godchaux-Henderson in July of 1950. He was promoted to various positions until his final promotion on January 1, 1978 to transportation supervisor. Serious problems existed in the transportation department concerning trucks both before and during Mr. Cashio's term as supervisor. At times trucks were late or would not show up at all. By May of 1978, Mr. Davan, vice president of corporate services for Great Western, felt it necessary to send a man to assist Mr. Cashio in obtaining timely truck deliveries. One account in particular depended upon timely shipments of sugar to their stores. When the deliveries were not made on time, the account was lost. On the same day the account was lost, Mr. Davan instructed Mr. Holt to terminate Mr. Cashio's employment. Mr. Cashio, shocked at being fired after twenty-seven years and ten months of service, requested a letter from Mr. Holt explaining the reason for his termination. He was subsequently given the letter written by James Holt informing him he was terminated for "dereliction of duties." Copies of the letter were given to six top managers with Great Western Sugar Company. An *822 employee of Godchaux-Henderson saw a copy of the letter on a file cabinet in the personnel office. Also, two secretaries with Godchaux-Henderson saw a copy of the letter lying on a copy machine in the administration building.
Appellee filed suit on June 28, 1978 against his supervisor, James Holt, and Clarence Davan, and Godchaux-Henderson Sugar Company, Inc., a subsidiary of The Great Western Sugar Company. Trial was held on May 13-14, 1981. On July 10, 1981, the trial judge signed a judgment awarding Mr. Cashio $200,000.00 against Godchaux-Henderson, Mr. Holt, and Mr. Davan, in solido, for injury to reputation, loss of public confidence, mental anguish and humiliation, and loss of opportunity to seek employment.
The essential elements of a defamation action are:
(1) defamatory words; (2) publication or communication to some person other than the one defamed; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Carter v. Catfish Cabin, 316 So.2d 517 (La. App.2d Cir.1975); Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958). The threshold issue is whether the words are defamatory, that is, capable of a defamatory meaning. Carter v. Catfish Cabin, supra. If the words are defamatory on their facedefamatory per sefalsity and malice are presumed and the defendant has the burden of rebutting the presumption. Carter v. Catfish Cabin, supra. Words are defamatory when they have a "tendency to deprive [a person] of the benefits of public confidence or injure him in his occupation ... or [have] a natural tendency to injure the person's reputation." Madison v. Bolton, supra, Makofsky v. Cunningham, 576 F.2d 1223 (5th Cir.1978). When the words themselves have those results, even without considering extrinsic facts and surrounding circumstances, they are defamatory per se. Makofsky v. Cunningham, supra.
Publication was indisputably made to managers of Godchaux-Henderson Sugar Company. However, a publication may be privileged. The essential elements of a conditional privilege are "good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only." Madison v. Bolton, supra. Publication of the letter to the managers and supervisors of Great Western Sugar Company was privileged. There was a valid business interest in informing the said parties of Mr. Cashio's dismissal. Joseph Metzler was vice president in charge of corporate affairs at Reserve at the time of the termination. Brian Duhe was personnel manager at Godchaux-Henderson and B. Beard was personnel manager of Great Western. P. Adolph was legal advisor to the company and Ferdinand Becnel, as administrative manager for Godchaux, was in charge of payroll and benefits. Mr. Davan, who ordered the termination, also received a copy of the letter. Thus, all concerned were proper parties to be informed of the termination. Each was informed in the proper manner, being hand-delivered a copy of the letter.
Although publication to the other parties who saw the letter was not privileged, there is no liability for publication which the defendant did not intend and could not reasonably anticipate. Prosser, Law of Torts 4th ed. (1971). A company employee testified that he was leaning on the file cabinet in the personnel office when he saw the letter and read it. We find that it was not unreasonable to have a copy of the termination letter on top of a file cabinet in the personnel office.
Two people testified that they saw the termination letter on the copy machine in the administration building. Vivian Sylvestre, dispatcher and secretary for Joseph Cashio at Godchaux-Henderson, testified that a few days after Mr. Cashio left the job, she went to use the copy machine and found a copy of the termination letter. She said up until that time she knew he had been terminated but did not know the reason. She stated the letter had the Godchaux-Henderson letterhead. The other woman with Ms. Sylvestre at the time, Ms. *823 Eble, testified she did not recall what type of paper the letter was on. The evidence indicates that Mr. Cashio was the only one to receive a letter with the letterhead on it. Mr. Cashio testified that when he received his termination letter, he went directly to his attorney's office and left the letter there until trial. However, two other women testified that Mr. Cashio showed them his letter after the day of his termination. Thus, the weight of the evidence failed to establish that Godchaux-Henderson employees, rather than Mr. Cashio, left the termination letter on the copy machine.
The trial judge adopted a memorandum of the appellee as his reasons for judgment. In this memorandum, it states that the testimony of these two women who claimed to have been shown the letter by Mr. Cashio should be viewed "with skepticism since it appeared that they were forced to testify by company personnel..." While it is true these women appeared subsequent to a request by their employer, there is nothing in the record to indicate that the context of their testimony was in any way dictated or forced by their employer. Thus, the trial judge, in accepting the argumentative memorandum of counsel as his reasons for judgment, did not adequately weigh the evidence introduced at trial. We find that there was no publication to any unprivileged parties by Godchaux-Henderson or the other named defendants.
Because the essential element of publication was not proven, we need not address the elements of defamatory words, falsity, malice, and resulting injury. For the reasons assigned, the judgment of the trial judge is reversed.
REVERSED.