434 So.2d 133 (1983)
HEALTH UNLIMITED, INC., d/b/a Aquarius Health Spa
v.
LOYOLA UNIVERSITY OF the SOUTH d/b/a WWL TV (Channel 4 in New Orleans) and Dennis Wolter.
No. 82-CA-153.
Court of Appeal of Louisiana, Fifth Circuit.
March 8, 1983.
Writ Denied May 23, 1983.
Harry R. Cabral, Jr., Cabral & Cabral, Metairie, for plaintiff-appellee.
Thomas A. Rayer, Denechaud & Denechaud, New Orleans, for defendants-appellants.
*134 Before CHEHARDY, BOWES and DUFRESNE, JJ.
BOWES, Judge.
Loyola University of the South, d/b/a WWL-TV (Channel 4 in New Orleans) appeals from a judgment of the district court awarding plaintiff $150,000.00 in damages and $15,000.00 in attorney's fees for broadcasting in a newscast what plaintiff alleged were defamatory, false, and misleading statements concerning plaintiff's business. We annul and set aside the award of the district court and reverse its judgment.
This case involves damages allegedly sustained by plaintiff as the result of a television newscast aired by WWL-TV on Saturday, February 9, 1980, at 6:00 p.m. The portion of the newscast which gave rise to this litigation was a story by WWL-TV news reporter, Dennis Wolter, concerning the closing on the previous Tuesday of the Europa Health Spa in Jefferson Parish. The story consisted of a one minute and forty-two second video tape filmed outside of the Europa Health Spa and an accompanying script read by Mr. Wolter. That complete script reads as follows:
"The Europa Health Spa paid off its employees, and closed its doors for good early this week.
Closing down right after a big campaign to sign up new members, reportedly at about half the usual charge.
Now, a class action suit has been filed against Europa's owners, it charges fraud.
It's unclear how much money Europa made from that last membership drive.
But word is the Spa signed up more than 200 members in January.
Beneficiaries to the late owner of Europa who died about three years ago are already in court fighting for control of the place.
Some contend the business was purposely being driven toward bankruptcy because of that fight.
Lawyer Earl Boydell (a member since '73) says the place was packed last time he was there just a week ago.
A spokesman for Europa's management could not be reached for comment."
The video tape portion of the story depicted various areas on the premises of the Europa Health Spa, including windows, doorways and entrances. A "flyer" advertising Aquarius Health Spa was posted on the entrance doors to Europa and said "flyer" was fortuitously included in the filming. According to the testimony of Julian Krajewski, photographer/editor and Dennis Wolter, newscaster for WWL-TV, the scene which included the flyer lasted approximately two to two and one-half seconds. At no time in the newscast was there any mention whatsoever in the audio portion of the story of Aquarius Health Spa, Health Unlimited, Inc., or of Mr. and Mrs. Cureton, the owners of Aquarius. Further, it was established during the trial that neither Mr. Wolter, nor any member of the camera crew, paid any attention to the wording of the flyer, nor did they recognize the persons of Mr. and Mrs. Cureton, as illustrated on the flyers.
Plaintiff alleges in its petition that defendant "did proceed to broadcast defamatory, false and misleading statements concerning plaintiff's business ... [and] [t]hat said libelous and slanderous accusations and misleading statements were made with reckless disregard of whether they were true."
Liability for such acts, if proven true, would attach under the provisions of LSA C.C. art. 2315, which states in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it ..." and, under the provisions of LSA C.C. art. 2315.1(A), which reads:
In addition to general and special damages, the plaintiff who obtains a judgment because of having been defamed, libeled, or slandered may be awarded punitive damages and reasonable attorney's fees, if it is proved that the defamatory, *135 libelous, or slanderous statement on which the action is based was made with knowledge of its falsity or with reckless disregard of whether it was false or not.
The function of this court in this case was enunciated by the Louisiana Supreme Court in Mashburn v. Collin, 355 So.2d 879 (La. 1977), where at page 886 the Court stated:
... [A]s a general rule, a Louisiana appellate court should not disturb the reasonable findings and inferences of fact of a trial judge or jury, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring Company, 283 So.2d 716 (La.1973). But when interpretation of a communication in the light of the constitutional requirements is involved, our scope of review is to examine in depth the "statements in issue" and the "circumstances under which they were made," [citations omitted], and to "re-examine the evidentiary basis" of the lower court decision in the light of the Constitution....
Our Louisiana courts have continued to toil with the never-ending task of defining the proper accommodation between the laws of defamation, libel and slander and the freedom of speech and press guaranteed by the First Amendment to the U.S. Constitution and applicable to the states through the Fourteenth Amendment. In Mashburn, supra, at page 885, the Louisiana Supreme Court made the following statements:
We conclude, therefore, that the First Amendment freedoms as defined by the New York Times-Gertz series of decisions afford, at the very least, a defense against defamation actions for expressions of opinion about matters of public concern made without knowing or reckless falsity.
... The contours of the New York Times-Gertz[1] privilege regarding expressions of opinion are uncertain but we think that it clearly protects at least (1) mere expression of opinion; (2) by members of the press or the news media; (3) concerning matters of public interest or concern; (4) when made without knowing or reckless falsity.
The Court went on to say, at page 891, that:
... Since the Supreme Court decisions from New York Times through Gertz and Firestone establish only minimum safeguards for the freedom of speech and the freedom of press under the First Amendment, it is permissible and perhaps appropriate for a state to grant broader protection of these important rights under its own constitution or laws....
It is clear that a state is free to adopt any reasonable standard, so long as it affords the minimum protection required by the New York Times-Gertz cases.
Following Mashburn, which was decided in 1977, came the case of Perrilloux v. Batiste, 357 So.2d 841 (La.App. 4th Cir. 1978), wherein the court listed the essential elements of defamation as (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) injury. These same elements were held to be essential in an action for defamation in HMC Management v. New Orleans Basketball Club, 375 So.2d 700 (La.App. 4th Cir. 1979) writs denied, 378 So.2d 1384, 379 So.2d 11 (1980). In 1980, these cases and others were cited approvingly by the Louisiana Supreme Court in Cangelosi v. Schwegmann Bros. Etc., 390 So.2d 196 (La.1980), wherein, at page 198, the Court made the succeeding remarks:
To maintain an action in defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. HMC Corp. v. New Orleans Basketball Club, supra; Trahan v. Ritterman, 368 So.2d 181 (La. App. 1st Cir., 1979); Lees v. Smith, 363 So.2d 974 (La.App. 3d Cir.1978); Perrilloux v. Batiste, supra; Harper v. Jeans, 353 So.2d 1093 (La.App. 2d Cir.1977), writ denied, 355 So.2d 264 (La.1978); Ward v. Sears, Roebuck & Co., 339 So.2d 1255 *136 (La.App. 1st Cir.1976); Lake Charles Diesel, Inc. v. Guthridge, 326 So.2d 613 (La. App. 3d Cir.1976); Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir.1975); Rogeau v. Firestone Tire and Rubber Co., 274 So.2d 454 (La.App. 3d Cir.1973). Accord, Makofsky v. Cunningham, 576 F.2d 1223 (5th Cir.1978).
The preceding jurisprudence makes crystal clear that a plaintiff must prove all five of these essential elements in order to prevail in an action for defamation, libel and slander.
In the case before us, the script of the alleged offending news story establishes without any doubt that there were no defamatory words spoken about the plaintiff. The only nexus between the plaintiff and the news story was the brief showing of plaintiff's advertising flyer on the door of Europa.
Paragraph six of plaintiff's petition reads as follows:
That when a health spa known as the Europa Health Spa closed its doors on February 4, 1980, petitioner obtained the permission of the former manager of the Europa to tack petitioner's "flyer" on the door of the closed Europa to try to attract the clients who were no longer being serviced by the Europa to plaintiff's health spa.
Testimony established that permission was obtained from Max Kowitz, who was the division manager of Europa. Mr. Kowitz testified that he called Mr. Cureton, with whom he had become personally acquainted, when Mr. Cureton worked for Europa, and suggested that Mr. Cureton might wish to place Aquarius flyers on Europa premises.
Gerald Meyers, who was the general manager of Europa, testified as follows, when questioned by plaintiff concerning his reaction to seeing the WWL-TV report, which included the Aquarius flyer:
A.... I was upset because the spa had closed on the previous Tuesday and we had our offices closed on Wednesday and Thursday and would go back in the evening and we found those flyers on the front door and on the front door of the office and we removed them on Wednesday and Thursday night so I was quite upset to see them there again. [...]
A. I don't know who put them there. I know that I removed them and that when I saw the newscast, both newscast I saw them up there. [...]
Q. What was it that upset you about the fact that they had shown in this newscast these flyers of Aquarius on Europa Health Spa's place?
A. I had objected to it being posted on the property and being shown on television. Naturally, as a competitor I was not in favor of Aquarius Health Spa if Europa was still in existence now we would probably be fighting with Aquarius tremendously, but I was upset because I had seen the notices the day after and I had seen them on the prior evening and had torn them down and was upset because I saw them back there.
Q. Can you recall how long before that night of February 9 it was that you took these flyers off of Europa?
A. Probably on Thursday night.
Q. So that would have been two nights before the newscast?
A. Right, they were not there on Friday. They were not there Friday because we went into the office and examined the property on Friday.
By admission of the plaintiff in its petition and by testimony at trial, it is unquestioned but that plaintiff's agent or agents repeatedly placed flyers on the building which housed Europa Health Spa, after plaintiff knew that Europa had closed under less than ideal circumstances, for the express purpose of capitalizing on the closure to obtain new members for Aquarius. The flyers on the Europa building were on public display and any adverse inferences could just as easily have been drawn by anyone personally viewing those flyers on the building, as by anyone viewing the newscast. The newscast never once mentioned Aquarius, nor intimated that it was *137 in any way the same or connected with the closed Europa Spa. We fail to see malicious intent in WWL's simply photographing for public viewing an Aquarius flyer repeatedly placed on the Europa building by the plaintiff's agent specifically for viewing by the public. The record being completely devoid of any evidence of malice of any kind obviates the necessity to proceed further.
For the reasons assigned above, we are of the firm opinion that the trial court committed manifest error when it found the law and evidence to be in favor of the plaintiff. Therefore, we annul and set aside the awards by the trial court for damages and attorney's fees and reverse its finding that defendant was at fault. All costs in the district court and all costs of this appeal are to be paid by appellee.
ANNULLED, SET ASIDE AND REVERSED.
NOTES
[1] New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).