GAUDIN, Judge.
James Baudoin was fired by his employers and he subsequently filed a defamation suit as the result of a letter sent to his labor union. Following a bench trial in the 29th. Judicial District Court, Baudoin was awarded $5,000.00 plus interest and court costs. Cast in judgment, jointly, severally and solidarily, were the Louisiana Power & Light Company and Ebasco Services, Inc.
On appeal, the power company and Ebas-co assigned three errors. The district judge allegedly erred (1) in not dismissing Baudoin’s lawsuit because he did not follow grievance procedures mandated by the employment contract, (2) in finding that the plaintiff was in fact defamed and (3) in failing to find that the defaming letter was privileged.
While these contentions have some merit, we cannot say either that the trial judge’s factual findings were clearly wrong or that her application of applicable defamation law was erroneous. We therefore affirm.
Baudoin was a union pipefitter assigned to the Ebasco shop at the Waterford III nuclear power plant in Taft, Louisiana. He was terminated after an investigation and search uncovered an illegal crab boiler in a tool box he had access to.
The tool boxes in the pipe shop were used to store hard hats and large tools or *1285items not normally stored in small, portable tool boxes.
As a consequence of this and other findings, Baudoin and other employees were fired on September 1, 1982. That same day, the following letter was sent by Ebas-co’s project superintendent to the business manager of Baudoin’s union:
EBASCO SERVICES INCORPORATED
EBASCO
P.O. Box 70
Killona, Louisiana
September 1, 1982
F-59593 E
Mr. Robert A. Quinn, Business Manager
Plumbers and Pipefitters Local No. 60
P.O. Box 8428
Metairie, La. 70011
LOUISIANA POWER & LIGHT COMPANY WATERFORD STEAM ELECTRIC STATION 1983-1165 MW INSTALLATION-UNIT NO. 3
Re: H. Dimaggio 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
H. Whitney 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
F. Gettle 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
C. Matthews 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
M. Ciuffi 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
J. Baudouin 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
C. Dykes 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
L. Southhall 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
Dear Mr. Quinn:
As you are aware, on August 31, 1982, a search was made by the LP & L Security Department, upon probable cause, of certain areas of the Waterford-3 Project and private property as authorized by warrant.
As a result of this action, the above captioned members are no longer permitted on the Waterford-3 site. We therefore request that these persons not be referred for employment by any contractor on this site for the duration of the project.
If they are referred, they will be refused admittance to the site.
Very truly yours,
W. C. Griggs for J.L. Wills
Project Superintendent
,. , WRS/kd
ec: J.L. Wills
R. J. Milhiser
W. R. Schee
B. Bledsoe
R. Laileugue-LP & L
W. Friloux-LP & L
The letter, obviously, misspells Baudoin’s name as “Baudouin.” This inadvertency is of no consequence to this litigation.
Baudoin’s suit was combined for trial with one filed by Fred Gettle. The trial judge ruled against Gettle, finding that his employer had “a factual foundation for its accusation ...” and firing. Any injury sustained by Gettle was not actionable.
With regard to Baudoin, however, the trial judge found "... that Baudoin’s firing was based solely on the loose connection between Baudoin and the crab boiler *1286found in the tool box.” The trial judge concluded:
“The communication that Baudoin’s firing was the result of the search made by security and that Baudoin was thereby barred from the job was not based on a reasonable foundation and meets all the elements of defamation. Ebasco and LP & L are therefore liable to Baudoin for defamation in communicating this information and the damages occasioned thereby.”
The evidence fully supports the trial judge’s finding of the “loose connection” between Baudoin and the crab boiler. There was absolutely no testimony indicating that the crab boiler was Baudoin’s or that he had otherwise in any manner misappropriated company property or materials.
More than one person had keys to each of the company’s tool boxes and there were master keys that fit all of the boxes. The boxes were randomly assigned on a temporary basis. There were no names or identifying numbers on any of the boxes.
The crab boiler found in the box Baudoin was then sharing with Mike Allemand had been placed in there in a burlap sack. Neither Baudoin nor Allemand could identify the crab boiler and neither knew how the boiler got into the tool box. Baudoin said he had been assigned that particular box the day before the crab boiler was discovered. Nonetheless, Baudoin lost his job and the defamatory letter went out.
Appellant’s first assigned error relates to the grievance procedure outlined in the employment contract entered into by Ebasco and Baudoin’s union, Local 60. Appellants cite a series of federal decisions and also several state cases, including Christy v. International Paper Company, 478 So.2d 578 (La.App. 2nd Cir.1985).
Baudoin testified that he did complain to two Local 60 representatives without success before filing suit. The trial judge, in deciding that Baudoin and Gettle could maintain their defamation actions, said:
“Plaintiffs’ claim for damages for defamation may lie regardless of the validity of the basis of their firing. Therefore, although the merits of the termination arguably must be brought through the contractual grievance procedure, their claims for defamation are properly before this court. An employer has no right to defame an employee when firing him regardless of the validity or invalidity of the firing and judicial relief for that tort may be claimed in state courts.”
We hold, as did the district judge, that a fired employee can proceed with a defamation suit in state court without first going through a grievance procedure in an attempt to be reinstated in the job and/or have back pay awarded.
To constitute defamation, these elements are necessary: (1) defamatory words, (2) publication, (3) falsity, (4) malice, either actual or implied, and (5) resulting injury. See Health Unlimited v. Loyola University, 434 So.2d 133 (La.App. 5th Cir.1983), writ denied at 435 So.2d 445 (La.1983).
Truth and privilege are valid shields to a defamation action and appellants assert both of these defenses.
The September 1,1982 letter strongly implies that Baudoin and the other listed employees were guilty of such misconduct as to bar their continued employment. The letter was defamatory and certainly published. Copies were sent to the six persons listed at the bottom of the letter. Baudoin was seriously implicated without just or probable cause. Malice can be implied.
Baudoin was unemployed for almost four months before securing another pipe fitting position (with American Cyanamid). Appellants did not specifically argue that the $5,000.00 reward was excessive assuming, for argument purposes, that Baudoin was actually defamed. Likewise, appellee does not ask for an increase in damages.
Appellants’ final assignment of error is that the trial judge did not find the letter from Wills to Quinn protected by a qualified privilege. While privilege may be a sound defense to a defamation suit, one *1287of the primary requisites is that the communication be made in good faith. See Ward v. Sears, Roebuck & Company, 339 So.2d 1255 (La.App. 1st Cir.1976), cited by appellants.
Here, however, there was no evidence directly connecting Baudoin to the crab boiler or to any unauthorized activity whatsoever. The boiler was in a tool box just assigned to Baudoin and shared by him with at least one other worker. The trial judge correctly found that Baudoin’s firing “... was not based on a reasonable foundation ...” and that the September 1, 1982 letter was written with implied malice and not good faith as far as Baudoin was concerned.
The trial judge found no fault with an employer’s right to conduct an investigation into possible thefts and misappropriations. She did conclude, however, that an employee cannot be terminated on mere suspicion and then have his name unfairly included in a letter such as the one Wills sent to Quinn.
We affirm, with the power company and Ebasco to equally bear costs of this appeal.
AFFIRMED.